IN THE MATTER OF EWING B. HAWKINS, Petitioner Below, Appellant.

(*June* 6, 1956.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Morris Cohen* (of Cohen and Cohen) for appellant.

*Joseph Donald Craven,* Attorney-General, and *Wilfred J. Smith, Jr.,* Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 9, 1956.

SOUTHERLAND, C. J.:

On April 21, 1955, the Attorney General issued a subpoena to "Ewing B. Hawkins, Delaware Broadcasting Company", di-

recting Hawkins to appear before him "to testify for the State all those things [he] shall know or be examined in", and further directing Hawkins to bring with him "the recording or reproduction of the Joe Pyne programs for April 19 and 20, 1955."

Hawkins is, we are informed, the principal officer of the broadcasting company, and Pyne is a radio commentator.

The subpoena does not contain any reference to any pending criminal proceeding, nor does it state the subject matter of any investigation then being undertaken by the Attorney General.

Hawkins promptly moved in the Superior Court to quash the subpoena. The Court denied the motion and directed compliance. 121 *A.* 2d 486. Hawkins appeals.

The reasons assigned in the court below for quashing the subpoena, and renewed here, are in effect two, *viz.*: (1) that the statutory power of the Attorney General to subpoena witnesses to appear before him does not include the power to issue a subpoena *duces tecum;* and (2) even if the power exists, the subpoena issued to Hawkins is void because the nature of the proceeding or inquiry in relation to which it was issued is not set forth.

1. Does the statute authorize the issuance of a subpoena *duces tecum?*

Section 2505, 29 *Del. C.* provides:

"The Attorney General and any Deputy duly constituted by letter of appointment from the Attorney General, may administer oaths and affirmations to witnesses at any time or in any place, as well as in the open sessions of the courts of the State; and may issue process to compel the attendance of witnesses at the office of the Attorney General, or at such other place as he, from time to time, designates."

Appellant says that the power to issue subpoenas to witnesses has in this country seldom been granted to the Attorney

General or the prosecuting officer; that the general legislative policy of the states has been adverse to conferring such power upon an administrative officer; and that the statute should therefore be strictly construed. He cites a number of cases holding that statutes conferring the power to issue a "subpoena", or a "subpoena *ad testificandum*" should not be construed as authorizing the issuance of a subpoena *duces tecum*.

We agree with the court below that the practice and decisions in other states are of little assistance in construing the Delaware statute, because of the significant difference in language. The term in our statute is "process"—not "subpoena". "Process" is a word of broad import and, standing alone, includes all the writs used in the law to summon or acquire jurisdiction over defendants, jurors and witnesses, or to seize property. See 2 *Bouv. Law Dict., Rawle's Third Revision*, p. 2731, "Process". The phrase used in the quoted statute—"process to compel the attendance of witnesses"—naturally includes both kinds of subpoena, since both are designed to elicit from a witness facts in his possession, whether drawn from his memory or from his records. There is no significant difference in our practice between the right to issue a subpoena *ad testificandum* and the right to issue a subpoena *duces tecum*. Either issues as of course in any lawsuit, at the direction of counsel. *Woolley, Delaware Practice*, §§ 570, 573. Indeed, the form of the latter writ is identical with that of the former except that it includes an additional clause specifying the documents to be produced by the witness. *Woolley, op. cit.* § 573.

Nor is there any reason of policy why the word "process" in the statute should not be given its natural meaning. The obvious purpose of the statute is to confer upon the Attorney General, in the investigation of crime and other matters of public concern, powers similar to those inherent in grand juries.

The statute was enacted in 1873, 14 *Del. L. Ch.* 378. In the year 1873 there were only two regular terms a year of the Court of General Sessions, 1852 *Code*, § 1911, and hence

only two sessions of the grand jury in each county. The legislature may well have thought it desirable to clothe the Attorney General, in the exercise of his prosecuting function, with full investigatory powers during the long vacations. (The original act of 1873 used the phrase "in vacation".) Whether or not this surmise be correct, it is clear that the general investigatory powers of the grand jury are now shared, at least to a substantial extent, by the Attorney General. It is also clear that the grand jury may institute an investigation of suspected violations of law, and in pursuing the investigation may compel the appearance of witnesses and the production of documents. 34 *Am. Jur.*, "*Grand Jury*", §§ 33, 37; *Hale v. Henkel,* 201 *U. S.* 43, 26 *S. Ct.* 370, 50 *L. Ed.* 652; *Blair v. United States,* 250 *U. S.* 273, 39 *S. Ct.* 468, 63 *L. Ed.* 979. It is reasonable to believe that the legislature intended that the Attorney General could do the same.

██ It follows that the statute here involved was intended to confer, and does confer, power to issue writs of subpoena *duces tecum* and compel the production of documents for examination by the Attorney General.

Appellant stresses the evils that may flow from the abuse of the power. The statute has been in force for eighty years, and, as the court below remarked, nothing about its actual operation has been so obnoxious as to induce the legislature to restrict its application. In any case of actual abuse the courts will find a remedy.

██ 2. Appellant's second point is that the subpoena fails to show on its face the subject matter of the investigation to which the demanded records relate. He argues that a witness is entitled for his own protection to know the nature of the inquiry and the purpose of the subpoena so that he may challenge its propriety if he so desires. If it appears from the statement of the nature of the inquiry that the Attorney General is acting beyond the scope of his authority, the witness, says appellant, is entitled to have the writ quashed.

The simple answer to this contention is that the limits of the investigation and the relevancy of the documents sought are matters which are of no concern to the witness. Such is the rule when a witness is called before a grand jury, *Blair v. United States, supra* [250 *U. S.* 273, 39 *S. Ct.* 471], and we think it equally applicable when he is summoned before the Attorney General. In the *Blair* case a witness summoned to testify before a grand jury in connection with an investigation demanded to know the object and purpose of the inquiry and, when not told, refused to testify. The Supreme Court of the United States, upholding the inquisitorial powers of the grand jury, discussed the legal rights of a witness summoned before it. Mr. Justice Pitney said:

"He is not entitled to urge objections of incompetency or irrelevancy, such as a party might raise, for this is no concern of his. *Nelson v. United States,* 201 *U. S.* 92, 115, 26 *S. Ct.* 358, 50 *L. Ed.* 673.

"On familiar principles, he is not entitled to challenge the authority of the court or of the grand jury, provided they have a *de facto* existence and organization.

"He is not entitled to set limits to the investigation that the grand jury may conduct. The Fifth Amendment and the statutes relative to the organization of grand juries recognize such a jury as being possessed of the same powers that pertained to its British prototype, and in our system examination of witnesses by a grand jury need not be preceded by a formal charge against a particular individual. *Hale v. Henkel,* 201 *U. S.* 43, 65, 26 *S. Ct.* 370, 50 *L. Ed.* 652. * * *

"And, for the same reasons, witnesses are not entitled to take exception to the jurisdiction of the grand jury or the court over the particular subject-matter that is under investigation. In truth it is in the ordinary case no concern of one summoned as a witness whether the offense is within the jurisdiction of the court or not. At least, the court and grand jury have authority and jurisdiction to investigate the facts in order to determine

the question whether the facts show a case within their jurisdiction."

In the instant case, the appellant, so far as the record shows, has no interest whatsoever in the proceeding except as custodian of a record of his company. He is a witness, not a defendant. He has no standing, we think, to ask a court to circumscribe the field of the Attorney General's inquiry. Of course, there are special cases in which a witness may have relief, *e.g.*, against self-incrimination, unwarranted invasion of his privacy, or oppressive or unreasonable demands for voluminous records. But nothing of that sort is suggested here. Appellant seeks to quash the subpoena as void on its face because it does not advise him of the subject matter of the investigation. On this record, that is no concern of his.

The judgment of the Superior Court is affirmed.