In the Matter of HENRY C. EASTBURN & SON, INC., NEWARK CONSTRUCTION CO., INC., and WARREN C. EASTBURN, Petitioners Below, Appellants.

(*January* 27, 1959.)

SOUTHERLAND, C. J., and WOLCOTT and BRAMHALL, J. J., sitting.

*Edmund D. Lyons* (of Morris, James, Hitchens and Williams) for appellants.

*Joseph Donald Craven*, Attorney-General, and *F. Alton Tybout*, Chief Deputy Attorney-General, for the State.

Supreme Court of the State of Delaware, No. 46, 1958.

SOUTHERLAND, C. J.:

On August 15, 1958 the petitioners below, Henry C. Eastburn & Son, Inc., Newark Construction Co., Inc., and Warren C. Eastburn, were served with subpoenas *duces tecum* commanding their appearance before the Attorney General at his office in Wilmington on the following day to testify concerning contributions to political parties during the years 1956, 1957, and 1958. The subpoenas required the production of all documents relating to such contributions.

Petitioners promptly petitioned the Superior Court to quash the subpoenas on the grounds (1) that they constituted an unlawful and unwarranted invasion of petitioners' privacy; (2) that they were oppressive and unreasonable; and (3) that the testimony and documents were not sought for any valid public purpose.

Affidavits were filed and argument was had. The court directed petitioners to appear in response to the subpoenas on September 26; but stayed the order if appeal were taken to this Court by that date. Petitioners appeal, and renew here their contentions below.

The case appears to have generated considerable ill-feeling between the petitioners and the State's law officers. Notwithstanding this bitterness, there is really very little at issue between the parties, as will be shown by a review of the facts set forth in the affidavits.

On August 14, the day preceding the issuance of the subpoenas, Deputy Attorney General Tybout, in charge of the matter, made a telephone appointment with Mr. Warren Eastburn for that evening to discuss "a confidential matter". Upon being told of the information required, Eastburn stated that he had nothing to hide and was willing to discuss the matter, but wished no publicity about it. Tybout explained that it was not his purpose to investigate the operations of Eastburn or of his company, but to investigate an entirely different matter. This matter, which concerns a possible criminal prosecution of a third person, he explained to Eastburn. Eastburn said he was willing to cooperate. According to Tybout they discussed "the size and extent and purpose" of Eastburn's contribution at length; and Tybout suggested that in order to save Eastburn the inconvenience of responding to a subpoena, Eastburn submit a written statement of facts, and it would be unnecessary to put Eastburn under oath. Eastburn agreed to submit the statement, though he left uncertain whether he would consult his attorney.

Eastburn's affidavit says that he first refused to answer questions concerning "the reasons and purposes for certain contributtions", but upon being told that he would be subpoenaed he agreed to submit the statement. Eastburn further says that on reflection he decided that the Attorney General's request was unreasonable and constituted an invasion of his privacy; and that he also concluded, from the discussion with Tybout and

from newspaper reports, that the purpose of the subpoena "was prompted by personal motives of the Attorney General by reason of differences between the Attorney General and officials of the Democratic party of the State of Delaware."

Tybout did not receive the statement and accordingly had the subpoenas served.

On the following morning Tybout received a call from Eastburn's attorney advising him that Eastburn would not appear unless he received a court order binding the Attorney General to secrecy; else he would move to quash the subpoenas. The petition to quash was thereafter filed.

The facts set forth disclose, as we said at the outset, that very little was at issue between the Attorney General and the witness at the end of their interview. It would appear that Eastburn readily gave Tybout all the desired information; he finally balked at reducing it to writing. Of course, he nevertheless had the right, which he exercised, to attempt thereafter to quash the subpoenas for whatever reasons he thought fit to advance.

Eastburn's contentions, as above stated, are three.

The second, that the production of the records was oppressive and unreasonable, may be summarily rejected. The constitution protects not only individuals but corporations from *unreasonable* searches and seizures, and a subpoena unlimited in scope is indefensible. *Hale v. Henkle*, 201 *U. S.* 43, 26 *S. Ct.* 370, 380, 50 *L. Ed.* 652. But here the documents are sufficiently specified and the number of the papers is obviously not so large as to make their production an oppressive task. The trial court gave the petitioners ample time to collect and produce the papers required.

The first and third contentions, taken together, in effect charge an abuse of process by the Attorney General in demanding the production of private papers, not in aid of any public purposes, but in furtherance of a personal feud between the Attorney General and the leaders of his own political party,

arising out of his attempt to secure renomination for office. This is alleged in the Eastburn affidavit. Of course, if that were true, the issuance of the subpoenas would constitute a gross abuse of power and a wholly unwarranted invasion of the petitioners' private affairs, and the subpoenas would be quashed. *In re Hawkins,* 11 *Terry* (50 *Del.*) 61, 123 *A.* 2d 113; and *cf.* Rule 17, Rules of Criminal Procedure, *Del. C. Ann.* And we agree with the suggestion of petitioners' counsel that when a witness is served with a subpoena *duces tecum* a timely motion to quash, supported by affidavit charging an abuse of process, requires the Attorney General to disclose to the court sufficient facts to show that he is acting within the scope of his official duty.

The case of *In re Hawkins, supra,* holds nothing to the contrary. That case involved an attempt to quash a subpoena because it did not show on its face the purpose of the investigation. The document sought was a corporate record of a semi-public matter. The witness was held not entitled to raise the question of relevancy and there was no affirmative charge of abuse of power.

We also agree that the Attorney General's investigatory powers, though broad (*In re Hawkins, supra*), are not to be *equated* with those of the Grand Jury. Thus the Attorney General has no power of presentment. It is not his duty, like that of the Grand Jury, to report generally to the court or to the public upon all matters of public interest. His statutory power of subpoena should ordinarily be used only when he seeks to procure an indictment or to prosecute or defend litigation for the State.

But when all this is said, his power and duty to investigate, upon information received, possible violations of the criminal law is undoubted. If the Tybout affidavit is credited, as it surely must be, he was engaged in such an investigation and issued the subpoena in furtherance of it.

The affidavit does not disclose the nature of the crime under investigation nor the name of the person under suspicion.

This is understandable. Such a disclosure, not followed by indictment, might well prejudice that person in the eyes of the public. It may be that in certain cases, it would be necessary for the court to know more than is disclosed here. If so, we think that the court has full authority to require the Attorney General to disclose it to the court and opposing counsel. If desirable, the court may impound the Attorney General's affidavit (or so much of it as is necessary) for the protection of the person under investigation.

In this case the nature of the investigation and the reasons for it were disclosed to Eastburn. If the matter so disclosed was one not within the scope of the Attorney General's official duties Eastburn could have stated the facts in his affidavit. Except for reference to articles in the public press dealing with the contest over the renomination to the office of Attorney General, the petitioners adduce nothing to support their charge of abuse of process.

Much is said in petitioners' brief upon the necessity of a showing of probable cause as a prerequisite, in certain cases, to the issuance of subpoenas compelling the production of private records. Of course, a subpoena *duces tecum* cannot be used as a basis of establishing a criminal charge against the person from whom private papers are sought. *Bowels v. Insel,* 3 *Cir.,* 148 *F.* 2d 91; *Nelson v. United States,* 93 *U. S. App. D. C.* 14, 208 F. 2d 505. But there is no attempt here to charge Eastburn with any crime. Delaware law does not forbid the making of political contributions. Indeed, petitioners assert (somewhat inconsistently) this very fact. Of course, the making of such contributions is ordinarily a private matter. But if the fact should become material to the proof of crime committed by a third person, it cannot be doubted that the witness, either before the Grand Jury or at trial, could be compelled to testify to facts within his knowledge and to produce documents material to the issue. The prohibition against unreasonable searches and seizures was not intended to interfere with the power of courts to compel, through a subpoena *duces tecum,* the produc-

tion upon trial of documentary evidence material to the issue. *Hale v. Henkel, supra*, 201 *U. S.* 43, 26 *S. Ct.* at page 378, 50 *L. Ed.* 652.

We cannot agree that this record shows any attempted unreasonable search and seizure of the petitioners' papers.

One qualifying statement must, however, be added. The Tybout affidavit, and (if we recall correctly) a statement at the argument by the Deputy Attorney General, suggest that the Attorney General might later on use the information obtained from the subpoena in connection with the investigation of some other and unrelated offense by the petitioners. The petitioners take this intimation as indicating that the testimony and documents are sought for the additional purpose of prosecuting petitioners on some offense now unknown and unrelated to the present investigation.

If this were so a wholly different question would be presented. Although the privilege against self-crimination does not apply to a corporation as such (*Hale v. Henkel, supra; Oklahoma Press Pub. Co. v. Walling*, 327 *U. S.* 186, 66 *S. Ct.* 494, 505, 90 *L. Ed.* 614), a corporate officer is entitled to claim the privilege in respect of crime committed by him and revealed by the books, though he may be required to identify the books. *United States v. Austin Bagley Corporation*, 2 *Cir.*, 31 *F.* 2d 229.

But it is premature to consider any such question now. The subpoena issued for a proper purpose.

Petitioners urge that there is danger in entrusting to the Attorney General the unrestricted power to issue the subpoena *duces tecum*. Counsel, in his zeal for his clients, is led to the somewhat extravagant statement that if this subpoena is sustained the Attorney General is superior to the law, and has in effect been clothed with the power to issue an obnoxious Writ of Assistance. The simple answer to all this is that the Attorney General has no power himself to seize anything. If his subpoena is not heeded he must apply to the court. The exercise

of his power is always subject to control by the court. A witness may always, as here, charge abuse of process, and the court must pass upon the issue, and safeguard any rights of the person summoned; if necessary, by attaching conditions to its order.

It is said that whereas proceedings before a Grand Jury are protected by the law of secrecy, proceedings before the Attorney General are not so protected. If this means that the statute is an unwise one, because of the lack of legal restriction on disclosure, the remedy must be sought in the legislature—not in the courts. But, in any event, we cannot assume that any member of the bar elected to the high and powerful office of Attorney General would commit the gross impropriety of publicizing the names of persons investigated in cases not warranting indictment. Nothing in this case suggests, as petitioners seem to imply, that the Attorney General's office intends any such action.

Finally, it was suggested at the argument that the Attorney General has already been given voluntarily all the information he seeks, or has secured it elsewhere, and that there is no reason for his insistence that Mr. Eastburn give the information under oath. It will be recalled that Tybout offered to take a written statement, in lieu of sworn testimony, and insisted on compliance with the subpoena only after a subsequent refusal to supply the written statement. If we assume to be true petitioners' assertion that full information has been given, it follows that this rancorous dispute is reduced to a simple question of taking a statement under oath. If it is said that the Attorney General ought to be content with what he has, it may be replied with equal force that the petitioner ought to be willing to put in writing what he has already told the deputy. In any event, we cannot ignore the right of the prosecuting officer under the statute to take a sworn statement. Such a precaution in an investigation is often dictated by sound considerations, such as the protection against lapse of memory or change of testimony. It seems unlikely that they are applicable to this case, but we

cannot deprive the Attorney General of his statutory right to examine the witness under oath.

It follows that the order of the Superior Court must be affirmed.

WOLCOTT, Justice (dissenting).

I disagree with the result reached by the majority of the Court. The appeal involves the scope of the Attorney General's power under 29 *Del. C.* § 2505, which we held in *In re Hawkins,* 11 *Terry* (50 *Del.*) 61, 123 *A.* 2d 113, gave him authority to issue both subpoenas *ad testificandum* and *duces tecum* in aid of his investigation of suspected violations of law. We pointed out, however, in that case that the statute does not give him the power in aid of making a general investigation. His power is confined to investigation of suspected crime. We held in the *Hawkins* case that the courts would shield a witness from the gross abuse of the statutory power upon a timely application to quash the process.

It follows, therefore, that the power of the Attorney General under the statute is not unrestrained. When timely resistance is made, the Attorney General has the burden of disclosing sufficient facts to satisfy the court of the propriety of his action.

I do not suggest that the record in this appeal demonstrates a gross abuse of the power. I do suggest, however, that sufficient has been shown by Eastburn to place the burden of justification on the Attorney General. To my mind, no such justification is shown in this record. However, I do not suggest that it could not have been discharged. I think no attempt to do so has been made.

The record shows no actual factual dispute as to what took place. A Deputy Attorney General called on Eastburn explaining that a suspected crime was being investigated, and inquired as to any political contributions made by Eastburn or any cor-

poration of which he was an officer.[1] Eastburn answered freely all questions about the "size and extent and purpose" of such contributions, but stated that for personal reasons he desired that the facts not be made public. Toward the end of the interview, under threat of subpoena, Eastburn agreed to reduce his answers to writing and file them with the Attorney General.

Later, on the same evening, Eastburn concluded from the discussion and from certain newspaper stories then current, that the motives of the Attorney General grew out of a controversy he was then having with officials of the Democratic Party over his renomination. Eastburn thereupon consulted counsel and determined to refuse to supply the written statement. This proceeding followed.

The showing made by Eastburn in opposition to the subpoena is that he has fully answered the questions asked him, but has refused to repeat those answers under oath. It is also the fact that he had committed no crime under Delaware law in contributing funds to a political party. From the newspaper accounts it is quite apparent that an acrimonious struggle was then going on between the Attorney General and the Democratic State Chairman over the former's renomination, in the course of which bitter charges were made by both sides, including an implication, at least, of the misuse of party funds to defeat the incumbent's bid for renomination.

The foregoing are the circumstances in which the subpoenas were issued. It seems to me that one permissive inference from them is the assumption, actually made by Eastburn, that the questioning of him was prompted not by an investigation of a suspected violation of law, but by the purely personal motive of the desire of the Attorney General to be renominated and to discredit the party official opposed to his renomination. This, of course, is only an inference—perhaps the wrong one—but it is,

---

[1]Contributions to political parties by either individuals or corporations are not illegal in Delaware. Nor is there any requirement of law that the facts be made public.

to my mind, sufficiently permissive from the circumstances to require rebuttal on the part of the Attorney General. No rebuttal was made except for the statement that the subpoenas were issued as part of an investigation of undisclosed crime.

I do not think this is sufficient. Admittedly, the Attorney General had possession of all the facts. The matter thus comes down to his demand that the facts be given under oath. To what purpose? The veiled hint in the State's affidavit, that the facts would become public knowledge if the issuance of subpoenas became necessary, inferentially supplies one possible purpose, which, I assume, would be characterized by the majority as an abuse of power. But, the majority suggests the right to require testimony under oath may not be questioned under the statute. I cannot agree with this, for all such statutory powers of the Attorney General are subject to judicial restraint on the ground of unreasonable or arbitrary action. *Cf. In re Shelley,* 332 *Pa.* 358, 2 *A.* 2d 809.

Absent some showing of a tendency on the part of Eastburn to change his testimony, or forget it—an unlikely contingency in this case—it is difficult to conceive a useful purpose in reducing the testimony to sworn statement. In point of fact, the normal course would seem to have been the presentment of an indictment to the Grand Jury and the summoning of Eastburn before it. Under the circumstances, the departure from the normal would seem to require some explanation before the aid of a court is sought.

I would reverse the order of the Superior Court and remand with instructions to permit the Attorney General by further affidavit to discharge the burden of demonstrating the propriety of the process.