In re Charles McGOWEN.

Supreme Court of Delaware.

March 7, 1973.

Rodman Ward, Jr., Prickett, Ward, Burt & Sanders, Wilmington, for petitioner-appellant.

Jerome O. Herlihy, Chief Deputy Atty. Gen., Wilmington, for respondent-appellee.

Before WOLCOTT, C. J., and CAREY and HERRMANN, JJ.

HERRMANN, Justice:

This is an appeal from the denial by the Superior Court of a motion to quash an Attorney General's subpoena. The Opinion below appears at 298 A.2d 339. We are required to review the propriety of the subpoena.

I.

At a school anti-bussing demonstration, one of the demonstrators made profane and insulting remarks to State Police Sergeant Clark Jester. A News-Journal photographer, Ronald Dubick, took various photographs of the demonstration in the course of "covering" the event. Sergeant Jester did not know the identity of the offending demonstrator; but the officer thought that he might obtain identification from fellow-officers with the help of photographs taken at the scene.

Next day, upon inquiry to a Deputy Attorney General, Sergeant Jester was informed that the offense described was probably a breach of the peace. Jester went to the News-Journal office and requested the pictures taken by Dubick for the purpose of exhibiting them to other police officers in a continuing effort to identify the offender. The request was made to Charles McGowen, the News-Journal employee in charge of its photography department. McGowen declined to deliver the photographs requested.

Thereupon, Sergeant Jester requested the Office of Attorney General to issue a subpoena directing McGowen to deliver to him the photographs in question. In compliance, the following subpoena was issued and served upon McGowen:

"THE STATE OF DELAWARE IN AND FOR NEW CASTLE COUNTY

"GREETINGS:

"THE ATTORNEY GENERAL OF THE STATE OF DELAWARE COMMANDS YOU to appear before the said ATTORNEY GENERAL or HIS DEPUTY ATTORNEY GENERAL, at his office in the County Court House in Wilmington, on the date, at the time and at the place specified below to testify on behalf of the State all those things you shall know or be examined in.

"TO:                           TO PRESENT PICTURES TAKEN BY

"Charles McGowan        DONALD DUBICK ON 9/23/72 AT
"Photography Department
"News-Journal Co.          MT. PLEASANT SENIOR HIGH SCHOOL
"831 Orange Street
"Wilmington, Delaware   TO SGT. CLARK JESTER

                                    FORTHWITH"

———◆———

McGowen promptly moved to quash the subpoena. In the course of the proceedings, McGowen initiated the deposition of Sergeant Jester; this led to a motion by the State for a protective order. The State's motion was granted; McGowen's motion was denied (298 A.2d at 341). This appeal followed.

## II.

It is the opinion of this Court that the document served upon McGowen was not a proper subpoena and should have been quashed.

■ The power of the Attorney General to issue subpoenas stems from statute. *29 Del.C.* § 2504(d) provides:

"The State Department of Justice and the Attorney General shall have the following powers, duties and authority:

\*　　\*　　\*　　\*　　\*　　\*

"(d) To investigate matters involving the public peace, safety and justice, and to subpoena witnesses and evidence in connection therewith; \* \* \*."

The progenitor of § 2504(d) was 29 Del.C. § 2505(a) which provided that the Attorney General and any Deputy "may issue process to compel the attendance of witnesses at the Office of the Attorney General, or at such other place as he, from time to time, designates."

■ The purpose of this statutory grant of power was to "confer upon the Attorney General, in the investigation of crime and other matters of public concern, powers similar to those inherent in grand juries", including the grand jury's power to "compel the appearance of witnesses and the production of documents." In re Hawkins, Del.Supr., 123 A.2d 113 (1956). The Statute was originally enacted in 1873. At that time, there were only two sessions of the grand jury each year. As explained by Chief Justice Southerland in *Hawkins*: (123 A.2d at 115)

"The legislature may well have thought it desirable to clothe the Attorney General, in the exercise of his prosecuting function, with full investigatory powers during the long vacations. (The original act of 1873 used the phrase 'in vacation'.) Whether or not this surmise be correct, it is clear that the general investigatory powers of the grand jury are

now shared, at least to a substantial extent, by the Attorney General."

As further stated in *Hawkins*, the statutory grant included the power, in aid of investigations of suspected violations of the law, to compel the production of documents "for examination by the Attorney General."

■ By definition: a subpoena is a command to appear at a certain time and place, on a certain date, to give testimony upon a certain matter; and a subpoena *duces tecum* is a command to appear at a certain time and place, on a certain date, to give testimony upon a certain matter— and, in addition, to bring and produce books, papers or things, in hand, "tending to elucidate the matter in issue." Woolley on Delaware Practice, §§ 570, 573.

■ It is apparent that the document issued by the Attorney General's Office in the instant case was not a properly issued subpoena for two reasons:

First: the document was not "returnable" to the Attorney General's Office. The recipient was neither commanded to appear before the Attorney General nor to produce the photographs for examination by the Attorney General. Rather, the document commanded the recipient to deliver the photographs to a police officer "forthwith", to be used by him in a continuing police investigation. Such open-end command lacks all recognizable characteristics of a subpoena.

■ Second: the document was issued to implement a routine police investigation, not a grand jury or an Attorney General investigation. The statutory and historical scope of the Attorney General's subpoena power may not be thus broadened. Nor may its purpose be extended or its usage delegated, absent statutory enlargement, so as to transform its original grand jury function into a police instrumentality.

Accordingly, we hold that the Superior Court erred in denying the motion to quash the subpoena.

## III

This conclusion makes unnecessary a decision upon the First Amendment ground of this appeal.

■ It is contended that the photographs and the photographer here involved are protected by the Freedom of the Press guaranty recently considered by the United States Supreme Court in Branzburg v. Hayes, 408 U.S. 665, 92 S.Ct. 2646, 33 L. Ed.2d 626 (1972). We do not pass upon that question here; this Court traditionally declines decision upon constitutional issues which have become academic in the pending case. Nevertheless, for future guidance, we express the view that the standards and guidelines of the *Branzburg* case would be generally applicable to an Attorney General subpoena in a proper case, in view of the historic equality of his subpoena power with that of a grand jury.

Reversed and remanded for further proceedings consistent herewith.