# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, DEPARTMENT OF FINANCE, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **C.A. No. 2018-0884-JRS** |
| UNIVAR, INC., | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Date Submitted: August 14, 2020
Date Decided: October 29, 2020

Melanie K. Sharp, Esquire, Martin S. Lessner, Esquire, Mary F. Dugan, Esquire and Michael A. Laukaitis, II, Esquire of Young Conaway Stargatt & Taylor, LLP, Wilmington, Delaware and Steven S. Rosenthal, Esquire, Tiffany R. Moseley, Esquire and John David Taliaferro, Esquire of Loeb & Loeb LLP, Washington, DC, Attorneys for Plaintiff State of Delaware, Department of Finance.

Michael P. Kelly, Esquire, David A. White, Esquire and Matthew J. Rifino, Esquire of McCarter & English LLP, Wilmington, Delaware and Jameel S. Turner, Esquire and James G. Ryan, Esquire of Bailey Cavalieri LLC, Columbus, Ohio, Attorneys for Defendant Univar, Inc.

**SLIGHTS, Vice Chancellor**

Plaintiff, the State of Delaware, Department of Finance (the "State"), is in the midst of a years-long examination of Defendant, Univar, Inc.'s compliance with Delaware's unclaimed property law. In connection with that examination, the State, through its agent and chosen auditor, Kelmar Associates LLC ("Kelmar"), directed Univar to supply certain documents. When Univar did not respond to that direction to the State's satisfaction, the State issued an administrative subpoena to Univar under a new provision of the statutory scheme governing unclaimed property in Delaware (the "Escheat Law"). The State now seeks a court order enforcing its subpoena.

Univar maintains that it need not comply with the State's subpoena on three grounds. *First*, it argues that changes in Delaware's Escheat Law, as amended in 2017 (the "New Law"), including the State's newly authorized subpoena power, cannot be applied retroactively to facilitate the State's examination of Univar since that examination was initiated well before the New Law was enacted.[1] *Second*, Univar argues the State's inability to protect the confidentiality of Univar's information by ensuring that the Kelmar auditors assigned to the Delaware examination will not share the information with other in-house auditors compels a finding that enforcement of the subpoena would be unreasonable. *Finally*, Univar

---

[1] *See generally* 12 *Del. C.* §§ 1130–90.

argues that the four specific categories of documents sought in the subpoena are too broad to satisfy the prerequisites for enforcement of an administrative subpoena under Delaware law.

As for Univar's retroactivity argument, even though its examination of Univar began before the New Law was enacted, I am satisfied the State has properly invoked its subpoena power under the New Law on a prospective basis. And, while Univar's confidentiality concerns are well-founded, the State has adequately addressed those concerns by consenting to certain conditions that will ensure Kelmar, as auditor, cannot improperly disseminate Univar's confidential documents. Finally, I disagree with Univar's characterization of the subpoena as unreasonably broad or burdensome under Delaware law. Accordingly, I will enter an order directing Univar to comply with the administrative subpoena, subject to strict confidentiality protections.

## I. BACKGROUND

The facts are drawn from the well-pled allegations in the State's Complaint, admissions in Univar's Answer, documents incorporated in those pleadings by reference and judicially noticeable facts.[2]

---

[2] Verified Compl. ("Compl.") (D.I. 1).

## A. The Parties and Relevant Non-Parties

Delaware's Department of Finance is responsible for enforcing Delaware's Escheat Law.[3] Brenda Mayrack, as the State Escheator, is designated by statute and by the Secretary of Finance as the principal enforcement officer.[4]

Defendant, Univar, is a Delaware corporation.[5] As a Delaware corporation, Univar is subject to examination under the Escheat Law as a potential holder of unclaimed property.[6]

---

[3] Compl. ¶ 3; 12 *Del. C.* § 1102.

[4] *Id.* With no support and little fanfare, Univar has argued the State's Complaint fails because "[n]either the Secretary [of Finance] nor its delegate are [named] parties to this Action." Def.'s Answering Br. in Opp'n to J. on the Pleadings ("AB") (D.I. 78) at 14 n.44. I disagree. The Complaint's first line makes clear that the action is brought by "[t]he State of Delaware, Department of Finance (the "State"), by and through Brenda R. Mayrack, the State Escheator." *See generally* Compl. Indeed, the State Escheator contemporaneously filed a Verification to the Complaint certifying its accuracy. *See* Verification, *Dep't of Fin. v. Univar, Inc.*, 2018-0884-JRS (Del. Ch. Dec. 7, 2018) (D.I. 1). Not only does Univar's argument ignore the Complaint's plain language, it ignores the purpose of Chancery Rule 17(a). That rule requires that actions be brought by the real party in interest to "protect[] against multiple litigation and the risk of double liability." 6A CHARLES A. WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1553 (3d ed. 2004); *see also White v. Metzer*, 159 A.2d 788, 790 (Del. Super. Ct. 1960) ("This rule was taken verbatim from the Federal Rules of Civil Procedure . . . ."). Given the manner in which the Complaint is framed, there is no risk that Univar will be subjected to further claims from the Department of Finance or State Escheator based on the same claim being adjudicated here.

[5] Compl. ¶ 1.

[6] Compl. ¶ 2; 12 *Del. C.* § 1130(9).

Nonparty, Kelmar, is a private auditing firm specializing in unclaimed property. It acts as an agent of the State to conduct unclaimed property examinations of Delaware businesses under the Escheat Law.[7]

## B. The Escheat Law

Delaware's Escheat Law allows the State to acquire title to abandoned or unclaimed property after the statutory waiting period has lapsed.[8] The statutory waiting period differs depending on the type of property that has or potentially has been abandoned.[9]

Delaware has had an Escheat Law for years, but the law was revised rather substantially in 2017 in response to the United States District Court for the District of Delaware's 2016 decision in *Temple-Inland, Inc. v. Cook*.[10] There, the court determined that certain aspects of the pre-2017 Escheat Law (the "Old Law") were unconstitutional as applied.[11]

---

[7] Compl. ¶ 10, Ex. A.

[8] *See* 12 *Del. C.* §§ 1130–90; *Dep't of Fin. v. AT&T Inc.*, 2020 WL 3888310 (Del. Ch. July 10, 2020) (providing a thorough explication of Delaware's Escheat Law).

[9] 12 *Del. C.* §§ 1133–34; Def.'s Answer to Pl.'s Verified Compl. ¶ 5 (D.I. 71) (describing the purpose and operation of the Escheat Law).

[10] *Temple-Inland, Inc. v. Cook*, 192 F. Supp. 3d 527 (D. Del. 2016).

[11] *Id.* at 550 (holding that the State's application of the Old Law violated substantive due process because "defendants: (i) waited 22 years to audit plaintiff; (ii) exploited loopholes in the statute of limitations; (iii) never properly notified holders regarding the need to maintain unclaimed property records longer than is standard; (iv) failed to articulate any legitimate state interest in retroactively applying Section 1155 except to raise revenue;

The New Law, like the Old Law, authorizes the State Escheator to examine records and take testimony to determine compliance with the Escheat Law.[12] Unlike the Old Law, however, the New Law now expressly authorizes the State Escheator to "[i]ssue an administrative subpoena to require that the records . . . [or] testimony specified . . . be provided."[13] The subpoena may be enforced through "an action in the Court of Chancery."[14]

## C. Procedural History

In December of 2015, the State provided notice of its intent to examine Univar's books and records to determine compliance with the Escheat Law.[15] On September 23, 2016, Kelmar sent its initial document request to Univar, requesting: (1) certain "Returns," (2) "Detailed State Apportionment Schedules," (3) a list of "Cash Managers, Shared Services Entities, [and] Common Paymaster Entities" and (4) copies of "Prior Audits or [Voluntary Disclosure Agreements]."[16]

---

(v) employed a method of estimation where characteristics that favored liability were replicated across the whole, but characteristics that reduced liability were ignored; and (viii) subjected plaintiff to multiple liability").

[12] 12 *Del. C.* § 1171(1), (2).

[13] 12 *Del. C.* § 1171(3).

[14] 12 *Del. C.* § 1171(4).

[15] Compl. ¶ 9, Ex. A.

[16] Compl., Ex. B.

After Univar did not respond to the document request to the State's satisfaction, the State issued the administrative subpoena at issue on October 30, 2018, directing Univar to provide the requested documents by December 3, 2018.[17] Rather than respond to the subpoena, Univar sued the Secretary of Finance, State Escheator and assistant director of the Department of Finance on December 3, 2018, in federal court.[18] The gravamen of that complaint is that the New Law is unconstitutional on its face and as applied to Univar.[19]

The State filed this action to enforce the subpoena on December 7, 2018.[20] I granted Univar's motion to stay in favor of the first-filed federal action on April 8, 2019, after concluding that Univar's constitutional challenges to the New Law, including the State's subpoena power, should be decided before I addressed the State's enforcement action on the merits.[21] The federal court granted in part and

---

[17] Compl. ¶ 13, Ex. C.

[18] Compl. ¶ 14; Def.'s Opening Br. in Supp. of Mot. to Dismiss or Stay (D.I. 7), Ex. A ("District Court Compl.").

[19] District Court Compl. at 35–37 (seeking in its Prayer for Relief, among other things, a declaration that the New Law, on its face and as applied to Univar, violates the Fourth Amendment's search and seizure clause and the Fourteenth Amendment's due process clause).

[20] (D.I. 1).

[21] *Dep't of Fin. v. Univar, Inc.*, C.A. No. 2018-0884-JRS (Del. Ch. April 18, 2019) (ORDER) (D.I 32); *Dep't of Fin. v. Univar, Inc.*, C.A. No. 2018-0884-JRS (Del. Ch. Apr. 8, 2019) (TRANSCRIPT) (D.I. 35).

denied in part the State's motion to dismiss on September 17, 2019.[22] The court then stayed the federal action to allow this Court to decide whether the subpoena is enforceable as a matter of Delaware law.[23] After I lifted the stay of this action, Univar moved to dismiss again, this time on ripeness grounds.[24] In a Letter Opinion dated May 21, 2020, I determined that the State had well pled a justiciable claim for enforcement of the subpoena and denied the motion to dismiss.[25]

The State moved for judgment on the pleadings on July 10, 2020. That motion has been argued and submitted for decision.[26]

---

[22] *Univar, Inc. v. Geisenberger*, 409 F. Supp. 3d, 273, 273 (D. Del. 2019).

[23] *Id.* at 284–85.

[24] Def.'s Opening Br. in Supp. of Mot. to Dismiss Pl.'s Verified Compl. (D.I. 51) at 2.

[25] *Dep't of Fin. v. Univar, Inc.*, 2020 WL 2569703, at *5 (Del. Ch. May 21, 2020) ("*Univar MTD*").

[26] *Dep't of Fin. v. Univar, Inc.*, C.A. No. 2018-0884-JRS (Del. Ch. Aug. 10, 2020) (TRANSCRIPT) (D.I. 86.) ("JOP Tr.").

## II. ANALYSIS

The State's motion invokes Court of Chancery Rule 12(c).[27] Judgment on the Pleadings is appropriate "where there are no material issues of fact and the movant is entitled to judgment as a matter of law."[28] "On a Rule 12(c) motion, the Court may consider documents integral to the pleadings, including documents incorporated by reference and exhibits attached to the pleadings, and facts subject to judicial notice."[29] Here, even though the Complaint is light on facts, as explained below, the State's request for relief is not fact intensive, and the few facts that are relevant to the determination of whether to enforce this subpoena are not subject to "reasonabl[e] question[]."[30]

As noted, Univar has argued the State improperly seeks to enforce the New Law retroactively and cannot, in any event, ensure that the documents it obtains will

---

[27] Because the State has not promulgated rules or regulations regarding the procedure to be followed in subpoena enforcement actions under 12 *Del. C.* § 1171(4), I previously determined that the Court of Chancery rules will apply to all aspects of these proceedings. *Dep't of Fin. v. Univar*, Inc., C.A. No. 2018-0884-JRS, at 22 (Del. Ch. June 23, 2020) (TRANSCRIPT) (D.I. 75.); *see also State ex rel Koster v. Charter Commc'ns, Inc.*, 461 S.W.3d 851, 853 (Mo. Ct. App. 2015) (ordering trial court to enter judgment on the pleadings enforcing administrative subpoena issued by the state Attorney General); *Houston Indus. v. Kaufman*, 1996 WL 580418, at *1–2, 4–5 (S.D. Tex. Mar. 7, 1996) (granting judgment on the pleadings to enforce a DOJ administrative subpoena).

[28] *Airborne Health, Inc. v. Squid Soap, LP*, 984 A.2d 126, 136 (Del. Ch. 2009).

[29] *Jiménez v. Palacios*, 2019 WL 3526479, at *8 (Del. Ch. Aug. 2, 2019).

[30] D.R.E. 201(b) (codifying Delaware's judicial notice doctrine).

be properly protected from dissemination. I address these threshold issues first before turning to the enforceability of the subpoena under Delaware law.[31]

## A. The State is Not Retroactively Applying the New Law

Univar argues the State has no authority to issue the subpoena because Section 1171(3), which authorizes the subpoena, was not in effect when the State's examination began.[32] The State acknowledges the New Law was enacted after it commenced its examination of Univar, but notes that its subpoena was issued well after the New Law went into effect.

At Sections 1172(b) and 1172(c), the New Law makes clear that the procedures outlined in the statute are available for examinations authorized prior to

---

[31] The State argues that Univar has waived its *England* reservation as relates to its federal constitutional claims by asserting those claims (or defenses) here. *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964); Pl.'s Opening Br. in Supp. of J. on the Pleadings ("OB") (D.I. 74) at 43. The so-called *England* doctrine, in simplified terms, allows a party who brings state claims in state court to reserve its related federal claims (including constitutional claims) for adjudication in federal court without waiving those claims. *Id.* at 422. I previously held in this case, and reiterate here, that the State's waiver and abstention arguments, principally based on federal law, are best left for the federal court to decide. *Univar MTD*, 2020 WL 2569703, at *5 ("[T]hat decision is properly left to the District Court."). Not surprisingly, "the State has pointed to no authority where a Delaware state court took it upon itself to decide whether a party had preserved constitutional arguments for presentation in a federal court." *Id.* Moreover, I disagree that Univar has presented constitutional claims or defenses here, and, as will be evident, my decision is based entirely on Delaware law.

[32] 12 *Del. C.* § 1171(3).

9

July 22, 2015, and February 2, 2017, respectively.[33]  These provisions reveal that the General Assembly intended that the State could issue subpoenas in aid of examinations that predated enactment of the New Law.  Moreover, a statute may not be applied retroactively only to the extent it "change[s] the legal consequence of acts completed before it[s] effective date."[34]  It is indisputable that the State had the power to issue administrative subpoenas before the New Law went into effect, albeit under a differently worded, and perhaps less precise, statute.[35]  Thus, there is no retroactivity problem here.[36]

---

[33] 12 *Del. C.* § 1172(b) ("for any examination authorized by the State Escheator on or before July 22, 2015 . . ."); § 1172(c) ("For any examination authorized by the State Escheator before February 2, 2017 . . ."); *see also* 12 Del. Admin. C. § 104-2.3 ("The effective date of these Regulations shall be the date they are adopted, and the standards contained therein shall apply to all examinations commenced after that date. *To the extent practical, the Regulations shall apply to any ongoing examinations that commenced prior to the effective date of these Regulations. . . .*") (emphasis added).

[34] *Miller v. Florida*, 482 U.S. 423, 430 (1987).

[35] *See* 12 *Del. C.* § 1155 (2015) ("The State Escheator may at reasonable times and upon reasonable notice examine the records of any person or business association or organization to determine whether the person has complied with any provision of this chapter and may by summons require the attendance of any person having knowledge in the premises, and may take testimony and require proof material for the investigation, with the power to administer oaths to such person or persons . . . .").

[36] Univar cites *In re McGowen* in support of its argument that "a subpoena based on statutory authority that was not in force when the investigation commenced could never be sufficiently grounded in statutory authority as required by law."  AB at 16–17 (citing *In re McGowen*, 303 A.2d 645, 647 (Del. 1973)).  *McGowen* does not say that.  Rather, the court determined an administrative subpoena issued by the Attorney General was unenforceable because it was technically defective (it was returnable to a police officer not the Attorney

## B. The State Meets the New Law's Confidentiality Requirements

From the outset of this litigation, Univar has maintained that the State, and more particularly its hired auditor, Kelmar, will not keep its sensitive business information confidential should the Court order Univar to comply with the subpoena. According to Univar, because Kelmar represents other states in their unclaimed property examinations of Univar, the Kelmar auditors assigned to the Delaware examination will likely share the information they obtain through the Delaware subpoena with auditors examining Univar on behalf of other states.[37] This, in turn, may result in the dissemination of Univar's sensitive information since many states lack the privacy protections that are featured in Delaware's New Law.[38] According to Univar, under these circumstances, the State cannot demonstrate that it will comply with the confidentiality requirements set forth in Sections 1174 and 1189 of the New Law and, thus, cannot meet the statutory prerequisites for enforcement of the subpoena.[39]

---

General) and because it was not issued to further an Attorney General's or grand jury investigation. *Id.* The court said nothing of retroactivity.

[37] AB at 26 ("Kelmar's receipt of confidential information in the Examination is synonymous with and identical to that information [being] provided to all of the [seventeen] states that Kelmar represents . . . .").

[38] AB at 27.

[39] AB at 21–28; 12 *Del. C.* § 1174(1) (emphasizing that records obtained in an unclaimed property examination are "subject to the confidentiality and security provisions of § 1189 of this title"); 12 *Del. C.* § 1174(2) (providing that records obtained in a Delaware

Univar's concerns are well-founded.[40]  Kelmar represents various states in unclaimed property examinations throughout the country and there is no evidence in the record regarding how Kelmar staffs its audits or whether Kelmar allows auditors conducting an examination in one state to work on an examination of the same subject entity in another state.  Nor is there any indication that the other states that might examine Univar, through Kelmar, impose the same statutory privacy protections that are in place in Delaware under the New Law.  Notwithstanding these legitimate concerns, I am satisfied this Court possesses the authority to require that Univar provide the requested material to the State subject to a confidentiality order that requires the State Escheator and her designated auditor to follow Delaware confidentiality laws.[41]

---

examination may be shared with examiners in another state only if such examiners are required to maintain records confidential to the same extent required by § 1189); 12 *Del. C.* § 1189 (imposing detailed requirements upon the State Escheator to maintain the confidentiality of documents obtained in examinations).

[40] AB at 24 ("(1) Kelmar is conducting an audit of Univar on behalf of seventeen states, including Delaware; (2) Kelmar is acting as agent for all seventeen states simultaneously; (3) Kelmar will conduct the Examination using the same audit team; (4) the same audit team from Kelmar will receive confidential information on behalf of all seventeen states; and (5) the same audit team from Kelmar will review and analyze the confidential information it is provided on behalf of seventeen states."); *id*. ("Kelmar cannot 'unsee' confidential information obtained from the Examination.").

[41] *Univar MTD*, 2020 WL 2569703, at *4 ("This Court has the authority, backed by its inherent contempt powers, to order that any books and records Univar produces in response to the subpoena be subject to a confidentiality order that complies with (and imposes) Delaware law.").

Apparently recognizing the Court was inclined to impose confidentiality conditions whether the State agreed or not, in submissions to the Court in support of this motion and again at the hearing on the motion, the State represented that "the Kelmar people now who are working on the Delaware-only audit, will not be working on the audit for any other state, and will, in fact, wall themselves—an ethical walling off of what they are doing for Delaware from anybody else."[42] This arrangement, coupled with a court order that will require everyone involved in the Delaware examination of Univar to comply with Delaware's confidentiality laws, answer the concerns Univar has raised about confidentiality.[43]

## C. The Subpoena is Enforceable Under *Powell*

As a general matter, Delaware courts look to the factors laid out by the United State Supreme Court in *United States v. Powell* when deciding whether to enforce

---

[42] JOP Tr. at 30–31 ("I'm going to say this is a representation that the State is making in this case, that this is what they and Kelmar will do in this case."); Letter from Martin Lessner to Vice Chancellor Slights 4 (Aug. 7, 2020) (D.I. 83) ("Kelmar will maintain ethical walls to insulate its personnel working on the Delaware-only Univar examination from working on a Univar examination for another state."). I note that the State has maintained throughout these proceedings that there is no ongoing multi-state examination of Univar. *See* OB at 38; Pl.'s Reply Br. in Supp. of J. on the Pleadings ("RB") (D.I. 80) at 23; *Univar MTD*, 2020 WL 2569703, at *3. Given the protections that will be imposed by my implementing order, I need not inquire whether the State has accurately portrayed the existence or extent of other states' examinations of Univar's compliance with their respective unclaimed property regimes.

[43] *See* 12 *Del. C.* § 1189(d) ("Any violation of this section shall be a misdemeanor, punishable upon conviction by a fine not to exceed $1,000, or imprisonment not to exceed 6 months, or both.").

an administrative subpoena.[44]  In *Powell*, the Court addressed the enforceability of an administrative subpoena issued by the Internal Revenue Service and held that an agency's subpoena will be enforced when it demonstrates: (1) "the investigation will be conducted pursuant to a legitimate purpose," (2) "the inquiry may be relevant to the purpose," (3) "the information sought is not already within the [agency's] possession" and (4) "the administrative steps required . . . have been followed."[45]

If the agency issuing the subpoena meets these elements, then the burden shifts to the objecting party to show that enforcement of the subpoena would be an abuse of the Court's process.[46]  "Such an abuse would take place if the summons had been issued for an improper purpose, such as to harass . . . or for any other purpose reflecting on the good faith of the particular investigation."[47]  This necessarily involves a consideration of reasonableness, such as whether the requests are specified with "reasonable particularity," "are relevant to the investigation" and do not "cover an unreasonable amount of time."[48]

---

[44] *United States v. Powell*, 379 U.S. 48, 57–58 (1964); *Univar MTD*, 2020 WL 2569703, at *4 (applying *Powell*); *AT&T*, 2020 WL 3888310, at *14 (same); *Bob's Discount Adult Books, Inc. v. Att'y Gen.*, 1983 WL 471443, at *2–3 (Del. Super. Mar. 24, 1983) (same).

[45] *Powell*, 379 U.S. at 57–58.

[46] *Id.* at 58.

[47] *Id.*

[48] *In re Blue Hen Country Network*, 314 A.2d 197, 201 (1973); *see also AT&T*, 2020 WL 3888310, at *16 ("This decision therefore concludes that Delaware law contemplates

14

The subpoena at issue here seeks four categories of documents. I take up each category in turn to assess whether the State has demonstrated its entitlement to the documents under *Powell*.

## 1. Category 1: "Returns"

The State has directed Univar to "[p]rovide the following sections of the 2014 filed Federal Form 1120 for Univar, Inc. If Univar files multiple Federal Form 1120s or separate partnership returns, provide the requested corresponding information for each 2014 filing."[49] The request then narrows the documents within this category to six specific forms or financial records: (a) "Form 1120, pp. 1 to 5."; (b) "Form 1125-A Cost of Goods Sold."; (c) "Form 851 Affiliations Schedule."; (d) "Consolidating Income Statement . . . ."; (e) "Consolidating Balance Sheet . . . ."; and (f) "Consolidating Cost of Goods Sold schedule . . . ."[50]

---

an inquiry into the reasonableness of an administrative subpoena under the Escheat Law, albeit one that is deferential to the State Escheator."); *Okla. Press Pub. Co. v. Walling*, 327 U.S. 186, 209 (1946) (explaining that the consideration of reasonableness "cannot be reduced to formula"). The New Law embraces this reasonableness inquiry in other contexts by providing that a subpoena may be issued "at reasonable times and on reasonable notice." 12 *Del. C.* § 1171.

[49] Compl., Ex. C.

[50] *Id.*

Univar has not directly addressed Category 1 in its brief, and for good reason.[51] The request for basic financial information in this category easily satisfies the *Powell* elements. An examination of compliance with the Escheat Law is a legitimate purpose, as evidenced by the fact that it is expressly authorized by statute. And, as explained by the State, the documents within this category will allow the State Escheator "to identify legal entities that are likely to have unclaimed property reportable to Delaware."[52] The State does not appear to have any of these documents in its possession, the request targets a single year (2014) and the State has followed proper steps to secure the information.[53]

### 2. Category 2: "Detailed State Apportionment Schedules"

In the second request, the State directs that Univar:

Provide the consolidated sales, property, and payroll state tax apportionment detail for all states for Univar, Inc. and affiliates for tax year 2014 (used in preparation of the corporate state income tax returns). Provide the applicable apportionment factor amounts by legal entity, by state, in electronic format. This information should segregate and identify all corporate entities as well as those disregarded for federal/state tax purposes.[54]

---

[51] AB at 29.

[52] OB at 27.

[53] *Id.* at 31.

[54] Compl., Ex. C.

Here again, there is no suggestion the State already possesses the requested information. Thus, the question of enforceability turns on relevancy and reasonableness. According to the State, this request will "allow [it] to identify legal entities that are likely to have unclaimed property reportable to Delaware" and "allow Delaware to narrow the scope of the examination in order to eliminate any entities unlikely to have reportable property."[55] Univar counters that because the request applies to "apportionment detail[s] for *all states*," it is overly broad and irrelevant.[56] I disagree. First, it is important for the State Escheator to understand whether the address of a property owner is known by Univar in order to assess Delaware's position of priority with respect to the property.[57] Second, contrary to Univar's suggestion, both federal and Delaware cases establish that there is no requirement that the issuing agency demonstrate probable cause, or some similar standard of proof, to justify the request for documents. The agency need only demonstrate that the documents "may be relevant to the purpose of the inquiry."[58]

---

[55] OB at 27.

[56] AB at 29–30 (emphasis in original).

[57] *Texas v. New Jersey*, 379 U.S. 674, 682 (1965).

[58] *See Powell*, 379 U.S. at 57 ("Reading the statutes as we do, the Commissioner need not meet any standard of probable cause to obtain enforcement of his summons, either before or after the three-year statute of limitations on ordinary tax liabilities has expired."); *Blue Hen*, 314 A.2d at 201 ("Blue Hen fails to point to any case that would support its position that subpoenas *duces tecum* must be supported with probable cause."); *AT&T*, 2020 WL 3888310, at *18 ("A statute certainly could require an agency to provide some

17

Finally, the Court's order will ensure that Kelmar will preserve the Delaware examination's confidentiality even as the State seeks information that may be of relevance to examinations conducted by other states. Because this request seeks relevant information, the second *Powell* factor is satisfied.

Enforcing this request is also reasonable. Like the first request, this second request is stated with particularity. Substantively, it is clear what is being requested, and temporally, the request seeks documents limited to a single tax year. There is no indication of bad faith or an improper purpose. The simple fact that this request seeks information "for all states" does not make it unreasonable—meaning there would be no abuse of the Court's process if the subpoena seeking this information were enforced.[59]

### 3. Category 3: "Cash Managers, Shared Services Entities, Common Paymaster Entities"

The State's third request directs that Univar:

Provide a list of all legal entities from the corporate organizational chart which pay liabilities (e.g., A/P, payroll, rebates, or refunds) on behalf of other legal entities. For each entity identified, provide a list of all entities involved in the arrangement, and the date that each entity began participating in the arrangement.[60]

---

reason or make some showing before conducting an investigation or obtaining an order enforcing a subpoena. The Escheat Law does not contain any such requirement.").

[59] Compl., Ex. C; *see Blue Hen*, 314 A.2d at 201.

[60] Compl., Ex. C.

Similar to the second category of documents, this third request also turns on relevancy and whether enforcement would be an abuse of this Court's process. As to relevancy, the State explains that "sophisticated entities frequently consolidate payroll, accounts payable and receivables in a single shared service entity."[61] "If Univar has a shared service entity, the State may be able to narrow any subsequent requests for information to that shared service entity."[62] This clearly is connected to the State's chief goal of determining Univar's compliance with the Escheat Law.

Given the request's limited scope, it would likewise not abuse this Court's process to require Univar to provide responsive documents. While Univar argues this request is "not sufficiently limited in time," I disagree.[63] The plain language of the request makes clear that Univar need not produce documents about legal entities that no longer exists. The State expects "only [] information about cash management and shared services as it exists now."[64] Because this request is temporally and substantively specific, relevant and not a product of bad faith, it is reasonable.

---

[61] OB at 27–28.

[62] *Id.* at 28.

[63] AB at 31.

[64] OB at 29.

### 4. Category 4: "Prior Audits or [Voluntary Disclosure Agreements]"

Request four directs Univar to "[p]rovide copies of reports and work papers, including demands for payment and release agreements, from any prior unclaimed property audits or Voluntary Disclosure Agreements with the state of Delaware."[65] While the request implies an indefinite time period, as explained below, it is cabined by the Escheat Law.

The State maintains that information related to prior audits and voluntary disclosure agreements ("VDAs") is relevant because it "will assist the State (and Univar) by eliminating periods of time for which liability has already been determined and assessed."[66] "It may also eliminate certain Univar entities from review, particularly if the corporate structure has changed over time through acquisitions or spinoffs."[67] Particularly at this early stage, that type of information is sufficiently tied to the purpose of determining compliance to meet the relevancy requirement.

Univar asserts the request is irrelevant to the extent the statute of limitations in the Old Law time-bars the underlying claims. While the State assumes the New Law's 10-year statute of limitations period applies, that may well not be correct.

---

[65] Compl., Ex. C.

[66] OB at 28.

[67] *Id.*

The "current examination" start date governs the statutory period since "the commencement of the investigation would toll the statute of limitations."[68] Here, the State's examination of Univar began in 2015, well before the General Assembly enacted the New Law.[69]

Beyond pegging the statute of limitations analysis to the Old Law, however, it is difficult at this stage to proceed further in that analysis without more information. The Old Law tied the imposition of the statute of limitations to the filing of annual reports, only permitting the State to recover unreported unclaimed property if the State Escheator issued a notice of deficiency for an annual report.[70] A three-year statutory period applied for the State to issue a notice of deficiency, extended to six-years if "an omission of abandoned or unclaimed property from a report ha[d] a value in excess of 25% of the amount of abandoned or unclaimed

---

[68] *AT&T*, 2020 WL 3888310, at *20.

[69] Compl. ¶ 9. At first glance, there might appear to be inconsistency in my determination that the State may rely upon the New Law's subpoena authority but may not rely upon the New Law's statute of limitations. On closer inspection, however, there is no inconsistency. The New Law clarified but did not alter a right belonging to the State Escheator that already existed. The New Law's statute of limitations is just that—new. The State's authority to examine a subject for compliance with the Escheat Law must be governed by the statute of limitations in effect at the time the examination was commenced. *See AT&T*, 2020 WL 3888310, at *20–21. Here, given that the Old Law was in effect when the State began its investigation of Univar in 2015, that law's statute of limitations controls.

[70] 12 *Del. C.* § 1142 (2015); 73 Del. Laws ch. 417, § 1 (2002); *AT&T*, 2020 WL 3888310, at *19.

21

property disclosed in [the] report."[71]  Given the early stage of the examination here, no information has been provided as relates to the filing of annual reports or their alleged deficiencies.[72]

The abandonment period, or period of dormancy, is likewise unclear.  The period of dormancy dictates at what point the property becomes escheatable; only when the property is deemed abandoned does the statutory period begin to run.[73]  In *AT&T*, Vice Chancellor Laster noted that, as relevant to the stage of that examination, the checks and rebates the State sought to claim had a five-year statutory period.[74]  Here, it is uncertain at this stage of the examination precisely which types of unclaimed property the State might identify.

More to the point, even if the statutory limitations period was clear, there is no "bright-line limitation on an agency's authority to conduct an investigation based

---

[71] 73 Del. Laws ch. 417, § 1 (2002); *AT&T*, 2020 WL 3888310, at *19.

[72] In *AT&T*, decided at a more advanced stage of the examination, Vice Chancellor Laster was able to observe that it "appears correct there are reports covering years for which the Old Statute of Limitations would bar the State Escheator from seeking to recover escheatable property."  *AT&T*, 2020 WL 3888310, at *21.  Given that this examination, while years old, is still in its nascent stages, I cannot make that observation here.

[73] 12 *Del. C.* § 1198(9) (2016) ("'Period of dormancy' means the full and continuous period . . . during which an owner has ceased, failed or neglected to exercise dominion or control over property . . . .").

[74] *AT&T*, 2020 WL 3888310, at *20 n.6.  Importantly, the period of dormancy is different depending on the unclaimed property at issue.  For example, a traveler's check is not presumed abandoned until 15 years after it was issued, but a money order is presumed abandoned after 5 years.  12 *Del. C.* §§ 1133.

on the running of the statute of limitations that would apply if the agency sought a remedy."[75]  While the statute of limitations issue can certainly prove relevant in assessing whether the State abused the court's process, it is not determinative as to the relevancy of the State's request.[76]  In contrast to the court's thorough analysis in *AT&T*, I am unable to discern at this stage of the State's examination whether "the State Escheator could reach property from a given year."[77]  Before such a determination could be made, the State Escheator (and the Court) would require the information the State seeks here.[78]

Finally, Univar argues that prior audit and VDA information must already be in the State's possession since it would have been supplied in connection with past examinations.[79]  The State counters that it still needs this information to help Univar by "confirm[ing] whether and to what extent the holder has resolved historical liability in a prior exam or VDA and [] verify[ing] that the State has complete

---

[75] *Id.* at *21; *see also EEOC v. Del. State Police*, 618 F. Supp. 451 (D. Del. 1985) ("It would be an inappropriate exercise of judicial power in an administrative subpoena enforcement proceeding to determine the merits of a statute of limitations defense that might be raised to a hypothetical future complaint.").

[76] *AT&T*, 2020 WL 3888310, at *22.

[77] *Id.*; *see also id.* at *27 ("The Department seems to be pursuing information about property that it knows it cannot recover . . . .").

[78] Univar does not dispute that the documents requested here had already been produced in *AT&T*.  JOP Tr. at 54 ("There was never a dispute about it.").

[79] AB at 31 n.108.

records, should remediation become necessary."[80] It further notes that the Secretary of State has administered a VDA program since 2013, separate and apart from the Department of Finance, and therefore there may be VDA records outside of the State Escheator's reach.[81] Finally, the State asserts that in its transition from paper to digital information in 2015, it is possible that certain records regarding past examinations were not retained. Since the point of this request is to ensure that the State Escheator acts with knowledge of past examinations when conducting this examination, the production of these records inures to Univar's benefit.[82]

While it is true that *Powell* requires the Court to consider the extent to which information sought in a subpoena may be available to the state agency from other sources, in this instance, I am satisfied this factor should not be dispositive. The State has demonstrated the information it seeks in this fourth category will assist the State Escheator in ensuring that the State acts consistently with past examinations of Univar and that it does not unnecessarily expand the scope of this examination. The request is not overly burdensome and I see no reason to conclude it is the product of bad faith.

---

[80] RB at 15 n.2.

[81] *Id.* According to the State, access to information possessed by other state agencies would be shielded from the State Escheator by "ethical walls." RB at 14.

[82] RB at 15 ("[I]t is only to Univar's benefit to provide any information about other audits or VDAs.").

The four requests, when considered together, are enforceable and lack any semblance of abusing this court's process. Only the second category's request for information from all states and the fourth category's lack of time boundaries could even conceivably create an aura of unreasonableness. Whether considered together or individually, neither triggers the concerns that animated the Court's concerns in *Powell*.

**D. Univar's Concerns Regarding Future Abuses Do Not Justify Denying Enforcement of this Subpoena**

As noted, the examination at issue in *AT&T* had progressed significantly further than the State's examination of Univar at issue here. Indeed, AT&T had already produced most, if not all, of the information the State seeks from Univar by the time the State sought to enforce its subpoena against AT&T.[83] In a demonstration of perhaps understandable pessimism, Univar argues that it "will be subjected in the near future to the overly broad and irrelevant Kelmar-inspired

---

[83] *AT&T*, 2020 WL 3888310, at *2; JOP Tr. at 54 ("In *AT&T*, the documents that Univar's complaining that they're not going to produce, [the same documents] were already produced much earlier in the [AT&T] examination.").

requests that were imposed on AT&T."[84]  That may or may not prove true.[85]  In this case, I must set my focus on the subpoena the State seeks to enforce now. For reasons stated here, that subpoena complies with our law and is enforceable.

## III.    CONCLUSION

For the foregoing reasons, the State's Motion for Judgment on the Pleadings is **GRANTED**, with the understanding that the implementing order will include the strict confidentiality protections outlined above.  The parties shall confer and submit a proposed implementing order, or competing proposed orders, within ten (10) days. Once entered, the effect of that Order will be stayed pending the resolution of Univar's claims in federal court.

---

[84] AB at 33.

[85] For what it is worth, should the State issue to Univar the kind of subpoena it directed to AT&T, and then seek to enforce that subpoena in the same posture it presented the AT&T subpoena to Vice Chancellor Laster, it will likely meet the same result.