**In re Vera K. PENNELL, Amy Sanders, Kenneth Sanders.**

Superior Court of Delaware,
New Castle County.

Submitted: Oct. 20, 1989.
Decided: Oct. 23, 1989.

---

Joseph J. Longobardi, III, of Roeberg, Haase & Associates, P.A., Wilmington, for movants.

Kathleen M. Jennings, and Peter N. Letang, Dept. of Justice, Wilmington, for the State.

## OPINION

GEBELEIN, Judge.

The movants, Vera K. Pennell, Amy Sanders and Kenneth Sanders, had been subpoenaed by the Attorney General to appear at the Attorney General's Office on October 20, 1989 to discuss what information they might have regarding the prosecution of Steven B. Pennell.[1] The movants seek to quash the subpoenas, alleging that they are abuse of the limited subpoena power granted the Attorney General.

Title 29 *Del.C.* § 2504(4) empowers the Attorney General to "investigate matters involving the public peace, safety and justice and to subpoena witness and evidence in connection therewith...."

Likewise, 29 *Del.C.* § 2508(a) allows the Attorney General to "... issue process to compel the attendance of persons, witnesses and evidence at the office of the Attorney General or at such other place as designated."

The movants argue that clearly the case against Steven B. Pennell has passed the investigatory phase and, therefore, the Attorney General is no longer investigating matters of public peace, safety and justice; and, cannot now subpoena witnesses in this matter under his statutory authority.

The statute does not define "investigate," but the movants argue that Delaware case law states that § 2504(4) precludes the Attorney General from issuing subpoenas at some point in time as the case moves from investigation to prosecution. The motion does not state with specificity when the movants believe the power ends; but the language of the motion indicates that they believe the authority ends at the latest at such time as a bill of indictment is issued in a particular criminal matter.

Delaware case law interpreting the statute has held that the purpose of the statutory grant of power to issue subpoenas was to confer upon the Attorney General, in the investigation of crime and other matters, powers similar to those inherent in grand juries. *In re McGowen,* Del.Supr., 303 A.2d 645 (1973).

In *McGowen,* the Court quashed the subpoena duces tecum where the Attorney General issued a subpoena that was not returnable to the Attorney General's office. But rather the McGowen subpoena commanded the recipient to deliver photographs to a police officer for his use in a continuing police investigation. Most significantly, the subpoena was issued to implement a routine police investigation, not a grand jury investigation or an Attorney General's investigation. The Court held that the statutory and historical scope of the Attorney General's subpoena power could not be broadened to transform its original grand jury function into a police instrumentality. *Id.* at 647.

The movants cite *McGowen,* but do not provide any facts to show that the subpoena issued to them was defective in that it was returnable to someone other than the Attorney General. The movants also do not state why this subpoena should be read as implementing a routine police investigation, rather than be read as a means of forwarding an investigation by the Attorney General. There is no doubt that the *Steven B. Pennell* case involved an extensive cooperative investigation involving several law enforcement agencies, ultimately under the control of the Attorney General.

---

1. Actually for the convenience of all concerned, the subpoenas actually directed the movants to appear at the New Castle County Police Building for interviews with the prosecution in the case of *State v. Steven B. Pennell,* IN88–12–0051–0053.

■ Because the statute does not define "investigate," the Court must construe the term in its context and according to an approved usage of the English language. 1 *Del.C.* § 303. To investigate means "to search into as to learn the facts; inquire into systematically." *Webster's New World Dictionary*, 741, 2d College Ed. (1982).

The Attorney General alleges that the subpoenas were issued to determine if the movants possess additional facts regarding the *Pennell* case that were not available when the movants were previously interviewed.[2] The Attorney General argues the subpoenas were issued "to search into as to learn the facts" of the *Pennell* case.

The inquiry for such information cannot be said to be an abuse of the Attorney General's power *merely* because it is sought after an arrest and indictment. Delaware law has held that the "statutory power of subpoena should ordinarily be used only when he seeks to procure an indictment or to prosecute or defend litigation for the State. *In re Eastburn & Son, Inc.*, Del.Supr., 147 A.2d 921, 924 (1959); *see also, In re Schiavi*, Del.Super., C.A. No. 78M–OC–25, Taylor, J. (Nov. 1, 1978) (letter opinion). Here, the Attorney General alleges the information potentially possessed by those subpoenaed is sought in its prosecution of the case. There is no allegation, however, that the information possessed by movants has changed since their prior interviews.

In *Eastburn*, the movant alleged an abuse of process by the Attorney General in issuing a subpoena duces tecum because the movant believed the information was sought in furtherance of a personal feud between the Attorney General and the leaders of his own political party. The Court stated that if that were true, the issuance would be a gross abuse of power. It stated that if the matter was one not within the scope of the Attorney General's official

duties, the movant could have stated those facts in his affidavit, but that the movant adduced nothing to support the charge of abuse of process. *Id.* at 924.

In this case, as in *Eastburn*, the nature of the investigation and the reasons for it are known to the movants. It is within the Attorney General's powers, duties and authority to have charge of all criminal proceedings. 29 *Del.C.* § 2504(6).

■ The movants argue that the State has abused its subpoena power because it is using the subpoena as a means of previewing the testimony of defense witnesses in the case. The movants' own motion states that they are "witnesses which the defense may call."[3]

This Court notes that subpoenas cannot be used as a means of production and inspection of statements of prospective witnesses. Super.Ct.Crim.R. 17(c); *McBride v. State*, Del.Supr., 477 A.2d 174 (1984) (defendant's use of subpoena duces tecum improper where defendant sought statements to use for impeachment purposes).

Clearly then, the defendant cannot use the subpoena power of this Court to obtain pretrial or trial discovery of the testimony of announced State's witnesses.

The power of the Attorney General to issue subpoenas is clear in appropriate cases. The Attorney General, to enforce those subpoenas, must rely upon the contempt power of Superior Court. *In re Eastburn & Son, supra*. Thus, should the movants ignore the issued subpoenas, the Attorney General would be entitled to seek the assistance of this Court in enforcing the subpoenas.

The State at argument indicated no specific reasons as to why at this time it is likely that movants would have any additional information to provide them, that was not available at the prior interviews. They offer no reason as to why five weeks into the trial of the case against Steven B.

2. At argument on this motion the State indicated that all three movants had been interviewed previously by law enforcement personnel; and one of them by the prosecutors themselves.

3. In particular the movants were all listed by the defense to be announced to the potential jurors as witnesses that were expected to be called.

Pennell there is a need to reinterview these witnesses. It appears that the State's interest arose only after the movants were listed as defense witnesses. It further appears (absent an expressed reason for reinterviews) that the State is attempting to use its subpoena power as a Court-assisted trial discovery technique,[4] and one that would be unavailable to the defense. Fundamental fairness dictates that the Court not be called upon to provide an unfair advantage to the prosecution or the defense in a criminal trial. To implement trial discovery for the State while denying it to the defense would be a denial of that fundamental fairness.

Upon the record as it now exists, the Court must GRANT the motion to quash.

IT IS SO ORDERED.

---

**4.** Clearly, the movants would be interviewed as to the nature of their conversations with defense counsel, thus allowing the State an opportunity to preview defense strategy.