# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE, ex rel.     )
KATHLEEN JENNINGS, Attorney  )
General of the State of Delaware,   )
                               )
        Petitioner,            )
                               )
         v.                )      C.A. N23M-06-118 JRJ
                               )
CABELA'S INC., BPS DIRECT, LLC  )
(d/b/a BASS PRO SHOPS), GREAT  )
OUTDOORS GROUP, LLC, and     )
GREAT AMERICAN OUTDOORS    )
GROUP, LLC,                 )
                               )
        Respondents.      )

Date Submitted:  July 18, 2024
Date Decided:  August 8, 2024
Date Issued: August 20, 2024
Date Corrected: September 30, 2024[*]

*Upon Consideration of Petitioner's Motion to Enforce Subpoena Duces Tecum,*
**GRANTED**

*Upon Consideration of Respondents' Motion to Quash,*
**DENIED**

**MEMORANDUM OPINION**

---

[*] This written decision follows the Court's August 8, 2024 Oral Ruling on the motions. **The title page has been corrected to (1) reflect the "Date Decided" is August 8, not August 9, and (2) the date of the Oral Ruling is August 8, not August 9**.

Evelyn H. Brantley, Esquire, Owen P. Lefkon, Esquire, Christian D. Wright, Esquire, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware.  Attorneys for Petitioner.

Francis G.X. Pileggi, Esquire, Andrew A. Ralli, Esquire, Lewis Brisbois Bisgaard & Smith LLP, Wilmington, Delaware, Alexander D. MacMullan, Esquire, Lewis Brisbois Bisgaard & Smith LLP, Wayne, Pennsylvania (*pro hac vice*).  Attorneys for Respondents.

**JURDEN, P.J.**

## I.     INTRODUCTION

This civil action arises from an investigation initiated by the Department of Justice ("DOJ") after it received information regarding significant quantities of ammunition stolen from a Cabela's sale floor.[1]  The DOJ seeks to investigate, among other things, Cabela's' loss prevention policies.[2]  On March 3, 2023, the DOJ issued a Subpoena *Duces Tecum* (the "Subpoena") to Respondents (collectively "Cabela's").[3]  In response to the Subpoena, Cabela's produced 2 documents–a one-page job description and a heavily redacted one-page "loss data" report–and 53 pages of objections.  As a result, the DOJ filed this Motion to Enforce Subpoena *Duces Tecum* ("Motion to Enforce"),[4] and Respondents, in turn, filed their Opposition[5] and a Motion to Quash the Revised Subpoena ("Motion to Quash").[6] For the reasons set forth below, the Petitioner's Motion to Enforce is **GRANTED**, and Respondents' Motion to Quash is **DENIED**.

---

[1] Petitioner's Mot. to Enforce Subpoena *Duces Tecum* ¶ 3, Trans. ID 70247906 (June 23, 2023) (hereinafter "Mot. to Enforce").

[2] *Id.*

[3] *Id.* ¶ 6.

[4] *See id.*

[5] Respondents' Answering Br. in Opp'n of Petitioner's Mot. to Enforce, Trans. ID 72769895 (Apr. 17, 2024) (hereinafter "Opp'n to Mot. to Enforce").

[6] Respondents' Opening Br. in Support of Mot. to Quash, Trans. ID 72769858 (Apr. 17, 2024) (hereinafter "Mot. to Quash").

## II.    BACKGROUND

On February 15, 2023, the DOJ issued a Subpoena *Duces Tecum* to Respondents citing possible violations of "10 *Del. C.* § 3930 and/or other laws."[7] Following the issuance of the subpoena, the parties engaged in discussions which resulted in the DOJ withdrawing the subpoena and issuing a second subpoena on March 3, 2023 with a return date of March 17, 2023.[8] The March 3 Subpoena, in response to Cabela's' request for elaboration concerning the "other laws" referenced in the first subpoena, cites *possible* violations of the following statutes: 10 *Del. C.* § 3930, 10 *Del. C.* ch. 71, 11 *Del. C.* §§ 603, 604, 1301, 1322.[9] The Subpoena includes an affidavit from Special Investigator, Patrick L. Malone ("Investigator Malone") that details an interview Investigator Malone had with a witness concerning large quantities of ammunition being stolen from the Cabela's Christiana store.[10]

On April 3, 2023, the parties entered into a Confidentiality Agreement pursuant to which Cabela's produced the two documents referenced above.[11]    On

---

[7] *See* Mot. to Enforce, Ex. B.
[8] Mot. to Enforce ¶ 6.
[9] *Id.*; *see* Mot. to Enforce, Ex. C (hereinafter "Subpoena").
[10] *See* Mot. to Enforce, Ex. A (hereinafter "Malone's Aff.").
[11] *See supra* Section I; Mot. to Enforce ¶ 8.  On July 22, 2024, Cabela's provided a copy of this production to the Court for in-camera review.  *See* Letter, Trans. ID 73741079 (July 22, 2024). One page is a job description, and the other is a lone percentage of sales.

June 6, 2023, Cabela's responded to the March 3 Subpoena by providing 53 pages of objections.[12]

### III. PROCEDURAL HISTORY

On June 23, 2023, the DOJ filed the instant Motion to Enforce.[13] On July 21, 2023, Cabela's removed the action to U.S. District Court for the District of Delaware ("USDC"), challenging the constitutionality of 10 *Del. C.* § 3930.[14] On January 24, 2024, the USDC remanded the matter back to the Court, finding there was no federal jurisdiction regarding the constitutionality of 10 *Del. C.* § 3930 and awarding the DOJ attorney's fees and costs.[15]

Following a February 23, 2024, status conference with the Court,[16] the parties briefed the instant Motions and a motion for a protective order,[17] and the Court held a hearing on all three motions on July 18, 2024.[18]

---

[12] Mot. to Enforce ¶ 10; Mot. to Enforce, Ex. D (hereinafter "Respondents' Objections"). The DOJ extended the March 17 due date in the Subpoena to June 6, 2023.

[13] Mot. to Enforce.

[14] Notice of Removal, Trans. ID 70456473 (July 21, 2023).

[15] *See* Mem. Op. Granting Remand, Trans. ID 71961505 (Feb. 6, 2024); *see Delaware ex rel. Jennings v. Cabela's Inc.*, 2024 WL 263296 (D. Del. Jan. 24, 2024).

[16] Judicial Action Form, Trans. ID 7212558 (Feb. 23, 2024).

[17] Motion for Protective Order, Trans. ID 72770537 (Apr. 17, 2024). During Oral Argument the Court directed the parties to further confer regarding the protective order, as such it will not be addressed here, and is still under advisement.

[18] Judicial Action Form, Trans. ID 73721346 (July 18, 2024).

## IV. PARTIES' CONTENTIONS

### A. The DOJ's Motion to Enforce

The DOJ asserts that pursuant to 29 *Del. C.* §§ 2504(4) and 2508(a), the Attorney General ("AG") has the power to "investigate a crime and other matters of public concern similar to the powers granted [to] a grand jury[,]"[19] and the Subpoena is enforceable because it meets the three-part test set forth in *In re Blue Hen Country Network* ("*Blue Hen*").[20]

Cabela's argues the Subpoena is unenforceable because (i) "the true basis for [the] DOJ's subpoena, SB 302, is unconstitutional,"[21] (ii) "the ancillary criminal statutes" do not apply to Cabela's and "are unreasonable in scope,"[22] (iii) the support for the Subpoena is "sensational and implausible,"[23] and the DOJ has not provided a "sufficient explanation as to why they are entitled to each category of document they seek."[24]

### B. Cabela's' Motion to Quash

Cabela's moves to quash the DOJ's Subpoena on three bases: "(i) the statute under which the purported investigation is being conducted is unconstitutional, rendering the [S]ubpoena invalid, (ii) the remaining criminal statutes used as a basis

---

[19] Mot. to Enforce ¶ 11.
[20] *See* 314 A.2d 197, 201 (Del. Super. 1973); Mot. to Enforce ¶¶ 11-12.
[21] Opp'n to Mot. to Enforce 11.
[22] *Id.* at 13.
[23] *Id.*
[24] *Id.*

for the investigation have no applicability to Cabela's, [or] the alleged investigation and render the [S]ubpoena unreasonable, and (iii) the allegations utilized to launch the investigation are baseless sensationalism, [and] contradicted by law enforcement's own actions in declining to prosecute the source."[25]

The DOJ counters that Cabela's does not have standing to pursue a constitutional challenge to 10 *Del. C.* § 3930,[26] there is "nothing superfluous about the additional criminal and civil statutes asserted,"[27] and Cabela's attacks on the veracity of the DOJ's witness "are not valid defenses to the investigatory [S]ubpoena."[28]

## V.  DISCUSSION

### A. The Motion to Enforce

The AG is empowered through 29 *Del. C.* § 2504(4) to "investigate matters involving the public peace, safety and justice[,] and to subpoena witnesses and evidence in connection therewith."[29]

---

[25] Mot. to Quash 4.

[26] Petitioner's Combined Reply Br. in Supp. of its Mot. to Enforce and Answering Br. in Opp'n to Respondents' Mot. to Quash 11, Trans. ID 73080513 (May 16, 2024) (hereinafter "Combined Reply Br. in Supp. of Mot. to Enforce").

[27] *Id.* at 21.

[28] *Id.* at 4.

[29] 20 *Del. C.* § 2504(4).

Cabela's argues the Subpoena is unenforceable because the statute it was brought under (10 *Del. C.* § 3930) is unconstitutional,[30] and that the other statutes cited by the DOJ are inapplicable and unreasonable because they are "a national, respected, law abiding premier outdoor supply and conservation company."[31] As stated by the Delaware Supreme Court in *In re Hawkins*:

> It is clear that the general investigatory powers of the grand jury are now shared, at least to a substantial extent, by the Attorney General. It is also clear that the grand jury may institute an investigation of suspected violations of law, and in pursuing the investigation may compel the appearance of witnesses and the productions of documents.[32]

1. *The other statutes in the DOJ's Subpoena are not "inapplicable" or "unreasonable"*[33]

   a. 10 *Del. C.* ch. 71

Chapter 71 governs Criminal Nuisance Abatement, and its purpose is "[t]o eliminate locations that otherwise attract criminals, violence and the threat of

---

[30] *See* Opp'n to Mot. to Enforce 9-10. The Court will address the arguments regarding 10 *Del. C.* § 3930 when it addresses Cabela's Motion to Quash. *See infra* Section B.

[31] Opp'n to Mot. to Enforce 9-10; *See* Mot. to Quash 38-42.

[32] *In re Hawkins*, 123 A.2d at 115. *See id.* ("The obvious purpose of the statute is to confer upon the Attorney General, in the investigation of crime and other matters of public concern, powers similar to those inherent in grand juries."); *see also Bob's Discount Adult Books, Inc. v. Attorney General*, 1983 WL 471443, at *1 (Del. Super. Mar. 24, 1983) ("Such subpoenas may properly be directed not only to individuals but also to corporations or agents of corporations who have within their possession or control evidence which is needed in an investigation.").

[33] The Court notes that Judge Andrews found that the Subpoena was based on alternate theories when remanding the case back to the Court. *See Delaware ex rel. Jennings*, 2024 WL 263296, at *4.

violence associated with . . . any of the other nuisances defined herein."[34]  Section

7103(5)(b) defines criminal nuisance as any real property where:

> The illegal use, manufacture, causing to be manufactured, importation, possession, *possession for sale, sale, furnishing, storing or delivery of ammunition or firearms has occurred*, or any act or acts which constitute any felony set forth in subpart E of subchapter VII of Chapter 5 of Title 11 . . ..[35]

The DOJ is not required to prove the elements of this offense to Cabela's or

the Court before investigating a possible violation.[36]  As stated in the Subpoena, the

investigation concerns *possible* statutory violations by Cabela's.  To be clear, at this

preliminary investigatory stage, the DOJ is looking into the *possibility* that Cabela's

stored ammunition in a manner that created a criminal nuisance.[37]

### b. 11 *Del. C.* §§ 603, 604, 1301, and 1322, and/or other laws

Sections 603 and 604 concern Reckless Endangerment.  11 *Del. C.* § 603(a)(1)

states a person is guilty of reckless endangering in the second degree when "[t]he

person recklessly engages in conduct which creates a substantial risk of physical

injury to another person,"[38] and § 604 states "[a] person is guilty of reckless

endangering in the first degree when the person recklessly engages in conduct which

---

[34] 10 *Del. C.* § 7102(a)(2).
[35] *Id.* § 7103(5)(b) (emphasis added).
[36] *See In re Hawkins*, 123 A.2d at 116 ("[T]he limits of the investigation and the relevancy of the documents sought are matters which are of no concern to the witness.").
[37] *See* Malone's Aff. ¶ 4 ("Ms. Brookens informed me during the interview, that she shoplifted ammunition from the Cabela's Christiana Mall store because it was easy to steal ammunition out in the open shelves and the security was lacking.").
[38] 11 *Del. C.* § 603(a)(1).

creates a substantial risk of death to another person."[39]  Depending on what the DOJ

discovers through its investigation, it may determine that the manner in which

Cabela's secures and stores its ammunition creates a substantial risk of injury to

others.

Pursuant to 11 *Del. C.* § 1301(1)(f), a person is guilty of Disorderly Conduct

if they create "a hazardous or physically offensive condition which serves no

legitimate purpose."[40]    Section 1301(1)(f) is relevant to the DOJ's stated

investigation.[41]

Section 1322 governs Criminal Nuisance.  A person is guilty of this offense

when:

> (1) By conduct either unlawful in itself or unreasonable under all the circumstances, the person knowingly or recklessly creates or maintains a condition which endangers the safety or health of others; or
> (2) The person knowingly conducts or maintains any premises, place or resort where persons gather for purposes of engaging in unlawful conduct.[42]

---

[39] 11 *Del. C.* § 604.

[40] 11 *Del. C.* § 1301(1)(f) (emphasis added).

[41] *See* Mot. to Enforce ¶ 3 ("The investigation concerns, among other things, Respondents' loss prevention policies, the extent of Respondents' awareness of the ongoing thefts, and the effect on the health, safety, and peace of the public."); Malone's Aff. ¶ 6 ("Ms. Brookens stated she sold the shoplifted ammunition . . . at area pawn shops in Delaware and to drug dealers and other gang-related individuals . . .").

[42] 11 *Del. C.* § 1322 (emphasis added).  *See* Mot. to Enforce ¶ 4 ("[T]he Christiana Mall location was specifically targeted [by shoplifters] because of its open display of ammunition and lacking security.").

Hypothetically, depending on the results of the DOJ's investigation, it is possible the DOJ could move forward with prosecution under any or all of the above statutes, or any other statutes the DOJ investigation renders applicable.[43] It is at that stage the DOJ would have to prove each of the elements of the offense(s) beyond a reasonable doubt, not now. At this stage, the DOJ's burden is to prove by a preponderance that pursuant to 29 *Del. C.* § 2504(4) it is investigating a matter involving the "public peace, safety and justice," and its requests are reasonably made in response to its stated investigation.[44]

---

[43] *See Bransburg v. Hayes*, 408 U.S. 665, 688 (1972) ("Because [the grand jury] task is to inquire into the existence of possible criminal conduct and to return only well-founded indictments, its investigative powers are necessarily broad."); *Johnson v. State*, 983 A.2d 904, 920 (Del. 2009) ("This Court has held that the purpose of this statutory grant of power is to confer upon the Attorney General, in the investigation of crime and other matters of public concern, powers similar to those inherent in grand juries, including the grand jury's power to compel the appearance of witnesses and the production of documents. Importantly, however, although this subpoena power is similar to that of a grand jury, the Attorney General's power to investigate is not terminated by arrest or indictment, and continues throughout the prosecution of an alleged crime.") (cleaned up).

[44] Cabela's argues that the DOJ has not established that it has violated any law or has any basis to even allege violations of the law. *See* Mot. to Quash 2, 4. Cabela's ignores the fact that the purpose of the Subpoena is to determine *if* Cabela's violated the law. Cabela's argues the DOJ has not explicitly addressed how each cited statute applies. Again, at this stage, the DOJ is not required to prove that Cabela's has violated any statute. *See State v. Salasky*, 2013 WL 5487363, at *15 (Del. Super. Sept. 26, 2013) ("The subpoena power conferred upon the Attorney General provides that office with nearly unfettered discretion to gather records, documents, and testimony as long as it can be established they are investigating 'matters involving the public peace, safety and justice.'").

## 2. *The DOJ's Subpoena is Reasonable*[45]

The Court held in *Blue Hen* that:

> Under the statute [29 *Del. C.* § 2504(4)] subpoenas may only be issued in connection with an investigation of 'matters involving the public peace, safety and justice.' There are fundamental constitutional limitations upon the manner and methods by which the Attorney General may conduct his investigations. Subpoenas duces tecum, for example, may not be used to impinge upon Fourth Amendment rights.[46]

The Court finds a brief recitation of the facts in *Blue Hen* helpful. The AG in *Blue Hen* issued a subpoena *duces tecum* to Blue Hen Country Network, Inc. and its president. The stated subject of that subpoena was:

> [The] Attorney General's continuing investigation of sales of securities within the State of Delaware to determine if materially misleading or fraudulent representations have been made in connection with offerings thereof.[47]

Blue Hen moved for a protective order and to quash the subpoena.[48] The Court held that a subpoena may only be quashed or modified "where the subpoena duces tecum

---

[45] Cabela's appears to argue the Court should not follow the *Blue Hen* reasonable analysis because the test "assumes the sound legal foundation of an investigation." Reply Br. in Supp. of Mot. to Quash 4. At this stage, the DOJ's investigation is just that, an investigation. Cabela's also takes issue with the use of Investigator Malone's Affidavit to support the Subpoena, but "the usage of the affidavits within the record is not to establish the truth of the assertion therein, but rather for the purpose of examining whether the State's concern [] was reasonable." *See State v. Johnson*, 2011 WL 4908637, at *7 (Del. Super. Oct. 5, 2011).

[46] *In re Blue Hen Country Network, Inc.*, 314 A.2d 197, 200 (Del. Super. 1973) (internal citations omitted).

[47] *Id.* at 199. The subpoena directed Blue Hen to provide all stock records, stock transfer records, books of account, and minutes of Directors' meetings of Blue Hen Country Network, Inc. and its subsidiaries. *Id.*

[48] *Id.*

is determined to be unreasonable," and set forth a three-part test to determine the reasonableness of a subpoena:

> (1) [T]he subpoena duces tecum must specify the materials to be produced with reasonable particularity;
> (2) the subpoena duces tecum must require the production only of materials that are relevant to the investigation; and
> (3) the materials must not cover an unreasonable amount of time.[49]

The Court in *Blue Hen* determined that the production of "all stock records, [and] stock transfer records" met the reasonableness test, but the request for "books of account and minutes of directors' meetings" did not meet the test because it was not sufficiently clear what information would be relevant to the stated investigation.[50]

In the instant case, the DOJ issued the Subpoena to Cabela's and stated it "relates to an investigation by the Fraud and Consumer Protection Division of the Delaware Department of Justice regarding possible violations of 10 *Del. C.* § 3930, 10 *Del. C*. ch. 71, 11 *Del. C.* §§ 603, 604, 1301, and 1322, and/or other laws."[51] Attached to the Subpoena is Investigator Malone's Affidavit which avers that ammunition was frequently shoplifted from the Cabela's store in Newark, Delaware (the "Christiana Store"); the stolen ammunition was then sold to pawn shops, drug dealers, and other "gang-related individuals"; and Cabela's was aware of the

---

[49] *Id.* at 200 (internal citations omitted).
[50] *Id.* at 202. Instead of quashing the subpoena, the Court in *Blue Hen* directed the AG to submit justification for those records. *Id.*
[51] *See generally* Subpoena.

problem and did nothing to protect its open display of ammunition.[52] The Subpoena, issued pursuant to 29 *Del C.* §§ 2054(4) and 2508(a), seeks 22 categories of documents that the DOJ argues are reasonably related to its stated investigation.[53] The Court now turns to the three-part reasonableness test.

      a. The Subpoena states with reasonable particularity the materials sought.

The first prong of the *Blue Hen* test requires that the Subpoena "specify the materials to be produced with reasonable particularity."[54] The DOJ contends that the Subpoena "defines with particularity the documents sought within a reasonably narrow scope."[55] Cabela's makes a few objections to what it characterizes as "undefined" terms.[56] Given the plain meaning of those terms, the Court finds the Subpoena specifies with reasonable particularity the documents sought.

      b. The Subpoena requests documents that are relevant to the DOJ's investigation.

The second prong requires that the Subpoena "require the production only of materials that are relevant to the investigation."[57] The DOJ argues that the documents sought "are relevant to [the] investigation both as set forth on the face of

---

[52] *See* Malone's Aff.
[53] Mot. to Enforce ¶¶ 12-13.
[54] *See In re Blue Hen*, 214 A.2d at 201.
[55] Mot. to Enforce ¶ 13.
[56] *See* Opp'n to Mot. to Enforce 16 (asserting "placement of ammunition" is undefined); 24 (asserting "deletion of any video footage" is undefined); 39 (asserting that identifying employees that "review" policies is vague).
[57] *See In re Blue Hen*, 214 A.2d at 201.

the subpoena itself and in consideration of the facts developed to date."[58]  Cabela's

objects to all 22 requests on the basis that 10 *Del. C.* § 3930 is unconstitutional and

the requests are "harassing and unduly burdensome."[59]  Neither of these objections

go to the reasonableness of the Subpoena as it relates to the stated investigation.[60]

The Court has engaged in a thorough review of the requests made in the

Subpoena and finds all are relevant to the DOJ's investigation.  The requests are

tailored to the stated investigation because they concern: shoplifting of ammunition,

ammunition storage, loss prevention and reporting, security footage and security

officers, corporate and employee communications and corporate policies pertaining

to ammunition displays and losses.[61]

The Court notes that some of the DOJ's requests seek information from

Cabela's' stores within 100 miles of the Christiana Store.[62]  In support of those

requests, the DOJ points out that (1) the Christiana Store is located on the

intersection of Delaware Route 1 and I-95 which is "highly visible to heavy daily

---

[58] Mot. to Enforce ¶ 13.

[59] *See generally* Opp'n to Mot. to Enforce 14-43.  The Court will not consider the challenge made in reference to 10 *Del. C.* § 3930 as that issue is addressed in reference to Cabela's' Motion to Quash.  *See infra* Section B.

[60] *See KDM Development Corp. v. Consumer Protection Unit of Department of Justice*, 2023 WL 7004101, at *3 (Del. Super. Oct. 24, 2023) (holding that just asserting subpoena items would require "time and effort" is not sufficient to find an undue burden).

[61] *See generally* Subpoena.

[62] *See* Combined Br. in Supp. of Mot. to Enforce 9.  The DOJ asserts that to its knowledge this would touch four stores outside of Delaware.  *See id.* at 8 n.8.

traffic traveling throughout Delaware";[63] (2) the affidavit attached to the subpoena states that the shoplifted ammunition does not stay in Delaware, but "travels for resale at a minimum to Dover and Philadelphia";[64] and (3) it is seeking information from Cabela's' stores within 100 miles of the Christiana Store "to determine whether the Christiana store and other nearby stores were following corporate policy and procedures in their relevant actions or inaction."[65] Cabela's objects to these requests as "overbroad" and argues the "information [] is neither relevant nor proportional to the needs of the case."[66] As noted in *Bob's Discount Adult Books, Inc.*,

> The Attorney General, like a grand jury, is not required to show the relevance of each and every document that might be produced pursuant to the subpoena . . . [o]nce the State has satisfied its burden as to the reasonableness of requesting the above categories of documents, then it will be the petitioner's burden to show that the request for the documents is clearly unreasonable.[67]

The DOJ has satisfied its burden to show that the requests seeking information from Cabela's' stores within 100 miles of the Christiana Store are reasonable and Cabela's has failed to show that the requests are clearly unreasonable.[68]

---

[63] Combined Br. in Supp. of Mot. to Enforce 8.

[64] *Id.* at 9.

[65] *Id.*

[66] Opp'n to Mot. to Enforce 16-17. Cabela's claims the requests are unenforceable because of "the importance of the issues," "the amount in controversy" [there is no amount in controversy, this is an investigative subpoena], "the parties' relative access to relevant information" and "resources" that the requests are unenforceable. *See id.*

[67] 1983 WL 471443, at *3 (Del. Super. Mar. 24, 1983).

[68] *See* Subpoena (item 3 requests Cabela's policies regarding the placement of ammunition and item 5 requests loss rates in the "manner in which records are retained"). To the extent Cabela's

c. The Subpoena does not cover an unreasonable amount of time.

Under the third prong, the Subpoena must "not cover an unreasonable amount of time."[69]  Cabela's argues the effective date of the Subpoena should be June 30, 2022, to reflect the effective date of 10 *Del. C.* § 3930.[70]  The Court disagrees.  As discussed earlier, the Subpoena is based on alternative theories, possible violations of numerous other statutes, not just 10 *Del. C.* § 3930.[71]  The "time period" for the Subpoena starts on January 1, 2018 which matches the five-year statute of limitations period of 11 *Del. C.* § 604, one of the possible violations cited in the Subpoena.[72]  The Subpoena does not cover an unreasonable amount of time.

The DOJ has carried its burden to show that the Subpoena is reasonable and made in response to its stated investigation, and therefore, it is enforceable.[73]

---

asserts that some of the information is protected by the attorney-client privilege and work product, the instructions attached to the Subpoena instruct Cabela's to submit a privilege log for that information.  *See* Subpoena II(5).

[69] 314 A.2d at 201.

[70] *See generally* Opp'n to Mot. to Enforce 14-43.

[71] *See supra* Section A(1).

[72] *See* Mot. to Enforce ¶ 13.

[73] *Compare Johnson v. State*, 983 A.2d 904, 920 (Del. 2009) (holding that the AG's subpoena seeking copies of defendant's mail while he was an inmate was reasonable under the test in *Blue Hen* because the State was investigating whether the defendant was contacting a potential witness); *State v. Salasky*, 2013 WL 5487363, at *15 (Del. Super. Sept. 26, 2013) (holding an AG's subpoena requesting all of defendant's mental health and medical history records to be relevant and reasonable under *Blue Hen* because the AG was investigating a potential homicide); *State v. Johnson*, 2011 WL 4908637, at *6 (Del. Super. Oct. 5, 2011) (holding that the AG's subpoena power extends to request for telephone records because of the "broad grant of power associated" with the AG's investigatory power; notably, the court found the subpoena to be reasonable even with an open-ended time period); *Bob's Discount Adult Books, Inc.*, 1983 WL 471443, at *3 (holding that under the three-part test, the AG only needs to show relevance for each category of

B. <u>Cabela's' Motion to Quash</u>

Cabela's argues in its Motion to Quash, *inter alia*, that the Subpoena is based on an unconstitutional statute and therefore it must be quashed because "there is no valid statute under which to launch an investigation or issue the subpoena."[74] Once again, Cabela's ignores the fact that the Subpoena references several statutes (alternative theories), not just 10 *Del. C.* § 3930,[75] and this is an action to enforce an investigative subpoena, not an action to enforce a statute.[76] The Subpoena is enforceable because it is reasonable.[77]

---

documents requested, not for each individual document); *Matter of Attorney General's Investigative Demand to Michael Malemed*, 493 A.2d 972, 976-77 (Del. Super. 1985) (finding that petitioner's concern that one of the requests in the AG's subpoena was a "fishing" expedition does not go to particularity, but rather to the relevancy prong, under which the court looks to the challenged request against the stated purpose of the inquiry), *with In re Pennell*, 583 A.2d 971 (Del. Super. 1989) (quashing a subpoena issued five weeks into trial holding that the subpoena was being used for trial discovery), *and In re McGowen*, 303 A.2d 645, 647 (Del. Super. 1973) (quashing a subpoena that was not returnable to the AG but to police officers to use as part of a routine police investigation).

[74] Mot. to Quash 1. Cabela's makes a number of constitutional challenges against § 3930 and argues that it is "breathtaking in its scope" and attaches liability to "innocent sellers." *See id.* at 5-6. Cabela's argues that § 3930 is preempted by the Protection of Lawful Commerce in Arms Act; and violates the Commerce Clause, the First Amendment, the Second Amendment, and the Due Process Clause. *Id.* at 12-34.

[75] *See supra* Section A(1).

[76] Cabela's in its Motion to Quash remains steadfast in its efforts to attack the character of the witness who partook in the interview with Investigator Malone. *See* Mot. to Quash at 2. Cabela's argues that the witnesses' statements defy "logistical realities – and Cabela's inventory records" but that lends support for the DOJ's Subpoena which is to determine if in fact Cabela's inventory records reflect such thefts. The Court will not engage in these attacks for the same reasons previously mentioned, the witness is not on trial.

[77] *See supra* Section A(2).

*1. Cabela's does not have standing to challenge 10* Del. C. *§ 3930.*

Standing "refers to the right of a party to invoke the jurisdiction of a court to enforce a claim or to redress a grievance."[78] Standing focuses on one question alone, and that is "who is entitled to mount a legal challenge."[79]

a. Injury-in-fact

To prove standing under Delaware law, the plaintiff must show they suffered an "injury-in-fact," (i.e., a concrete and actual invasion of a legally protected interest); (2) there is a causal connection between the plaintiff's injury and the conduct complained of; and (3) it is likely the injury will be redressed by a favorable court decision.[80]

Cabela's claims it has suffered an injury-in-fact because the "investigation and subpoena has caused Cabela's to retain counsel, incur fees, and make significant

---

[78] *Dover Historical Soc. v. City of Dover Planning Com'n*, 838 A.2d 1103, 1110 (Del. 2003).

[79] *Albence v. Mennella*, 2024 WL 3209116, at *2 (Del. June 28, 2024). The Court notes that in *Albence*, the Court found a lack of standing because the plaintiff could not establish an imminent injury in fact to the challenged election law. The plaintiff was not running for election in 2024, and his intent to run again in the future did not confer standing to challenge an election law. *Id.* at *5. The Court in *Albence* noted that depending on the motion filed and the action alleged, the standard for analyzing standing may change. *See id.* ("When a party moves to dismiss based on a lack of standing and 'is not arguing that the court lacks the authority to grant the relief requested to any plaintiff (i.e., lacks subject matter jurisdiction), but rather ... that the court cannot grant relief to *these particular plaintiffs*, the motion is more properly decided under Rule 12(b)(6)' rather than 12(b)(1). This distinction matters because, under Rule 12(b)(6), we accept as true all well pleaded factual allegations, even if vague, so long as they give the defendants notice of the claim. And we 'draw all reasonable inferences in favor of the non-moving party[.]'") (alterations in original). The Court makes note of this to emphasis the fact that the instant motion is a motion to quash an investigative subpoena, not a motion to dismiss or a motion for summary judgment.

[80] *In re COVID-Related Restrictions on Religious Services*, 2024 WL 3616269, at *12 (Del. Aug. 1, 2024).

changes to its everyday business practices at its Christiana location,"[81] and that "[e]ven without the investigation" Cabela's would have standing.[82]  Cabela's relies on *Lozano v. City of Hezleton*[83] in support of its injury-in-fact argument.[84]  In *Lozano* the challenged statute concerned local ordinances that regulated the employment and housing of certain undocumented individuals.[85]  The Third Circuit held that "at least one plaintiff" had standing to challenge the employment and housing provisions because:

> [T]he IIRAO's employment provisions require businesses to submit affidavits . . . incentivize, and in certain circumstances mandate, the use of E-Verify; create procedures for adjudicating independently of federal law whether a business has employed an [undocumented individual]; and penalize a business for doing so by suspending its business license.[86]

The Third Circuit determined that Lozano (a plaintiff and landlord) and Espinal (a plaintiff, landlord, and owner of a real estate agency) suffered an injury-in-fact because they sometimes hired contractors to perform work on their properties, and

---

[81] Respondents' Reply Br. in Supp. of Mot. to Quash 5-6, Trans. ID 73283272 (May 31, 2024) (hereinafter "Reply Br. in Supp. of Mot. to Quash").  The legal fees Cabela's has incurred fighting the investigative subpoena do not confer standing.  *See, e.g., Johnston v. Arbitrium (Cayman Islands) Handels AG*, 720 A.2d 542, 545 (Del. 1988) ("Under the American Rule, absent express statutory language to the contrary, each party is normally obliged to pay only his or her own attorneys' fees, whatever the outcome of the litigation.").

[82] Reply Br. in Supp. of Mot. to Quash 7.

[83] *See id.* 5-6.

[84] 620 F.3d 170, 186 (3d Cir. 2010), *vacated on other grounds by City of Hazleton, Pa. v. Lozano.*, 563 U.S. 1030 (2011).

[85] *Id.* at 176.

[86] *Id.* at 184.

"are direct targets of an ordinance they allege to be unconstitutional, complaining of what that ordinance would compel them to do."[87] The Third Circuit held that the challenged ordinances would affect the plaintiffs in a "personal and individual way" because:

> Enforcement of the IIRAO would create coercive pressures compelling them to investigate the work authorization status of the prospective contractors they seek to hire. Additionally, they would be required to submit affidavits to Hazleton's Code Enforcement Office affirming that they do not knowingly utilize the services of 'unlawful workers.' Failure to comply with either directive could result in significant sanctions. These costly requirements, imposed directly and purposefully on these Plaintiffs, are a particularized injury-in-fact.[88]

Cabela's' reliance on *Lozano* is misplaced. Section 3930 prohibits "unlawful" and "unreasonable" conduct but does not impose affirmative requirements on Cabela's, like those in *Lozano*.[89]

Next, Cabela's argues it has standing because the threat of prosecution under an allegedly unconstitutional statute may constitute an injury-in-fact.[90] Cabela's relies on *Babbitt v. United Farm Workers Nat'l Union* for this proposition.[91] In

---

[87] *Id.* at 186.

[88] *Id.*

[89] 10 *Del. C.* § 3930(b). Section 3930(c) mandates that a "firearm industry member establish and implement reasonable controls regarding the manufacture, sale, distribution, use, and marketing of the firearm industry member's firearm-related products." Cabela's argues it made "significant changes to its everyday business practices." Reply Br. in Supp. of Mot. to Quash 6. Cabela's claim is bereft of detail given it has not stated what those changes were or how those changes invoke § 3930.

[90] Reply Br. in Supp. of Mot. to Quash 6.

[91] 442 U.S. 289, 299 (1979).

*Babbitt*, the complaint concerned "statutory election procedures" that plaintiffs alleged "entail inescapable delays and [] preclude conducting an election promptly enough to permit participation by many farmworkers engaged in the production of crops having short seasons."[92] In *Babbitt*, the United States Supreme Court repeatedly noted the extra layer of fear underlying statutes that invoke criminal penalties, stating "when fear of criminal prosecution under an allegedly unconstitutional statute is not imaginary or wholly speculative a plaintiff need not 'first expose himself to actual arrest or prosecution to be entitled to challenge [the] statute.'"[93] The United States Supreme Court found that appellees, a farmworkers' union, had adduced evidence tending to prove that the statute frustrated their interests;[94] the State had not disavowed any intention of invoking the criminal penalty provision, and the appellees had reason to fear prosecution.[95] Here, Cabela's has not offered any evidence as to how § 3930 frustrates its ability to store, sell or manufacture firearms or ammunition. Simply arguing that the statute targets firearm sellers as a whole and Cabela's sells firearms is insufficient.[96] Cabela's "fear" of possible prosecution under § 3930 is not an injury-in-fact. The DOJ's investigation

---

[92] *Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 299 (1979).
[93] *Id.* at 302-303.
[94] *Id.* at 300.
[95] *Id.* at 302.
[96] *Id.* at 298 ("But 'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'") (quoting *Younger v. Harris*, 401 U.S. 37, 42 (1971)).

may proceed under § 3930, or it may not.[97]  11 *Del. C.* § 3930 is only one of several statutes cited in the Subpoena.

Cabela's further argues that even without the present investigation Cabela's would have standing to challenge § 3930 based on *Planned Parenthood of Cent. N.J. v. Farmer*, and *Pic-A-State Pa., Inc. v. Reno*.[98]  In *Planned Parenthood*, plaintiffs brought an action challenging a newly enacted statute that outlawed certain kinds of abortions.[99]  The challenged statute in *Planned Parenthood* would have exposed plaintiffs (Planned Parenthood) to "civil liability and license revocation."[100]  The Third Circuit found that plaintiffs had standing because the challenged statute encompassed the "conventional methods of abortion *plaintiffs currently perform*."[101]  There was no question in *Planned Parenthood* that the implementation of the challenged statute would directly harm the plaintiffs who were actively performing the abortion methods outlawed.[102]  The court in *Planned Parenthood* noted that in the abortion context it is "well-established precedent . . . that abortion providers have

---

[97] Combined Br. in Supp. of Mot. to Enforce 12-13 (stating that because the instant action is one to enforce an investigatory subpoena, and not a charging document or a complaint, that depending on the information it receives from Cabela's criminal, or civil actions may or may not be implicated at that time).

[98] *Id.*

[99] 220 F.3d 127, 131 (3d Cir. 2000).

[100] *Id.* at 146.

[101] *Id.* (emphasis added).

[102] *See id.* at 147 ("[T]he Act is so vague as to be impervious to a readily susceptible narrowing construction, effectuating a ban on the conventional types of abortions currently performed by plaintiffs.  Given that the Act is not subject to a narrowing construction, it occasions an imminent 'injury in fact' upon plaintiffs because, as written, it threatens them with severe civil penalties, namely, license revocation and a $25,000 fine.").

third party standing to assert the rights of their patients in the face of governmental intrusion into the abortion decision in order to determine whether such interference would constitute an undue burden."[103]  There is no well-established precedent here, and Cabela's' reliance on this case is misplaced.

Cabela's also relies on *Pic-A-State Pa.*,[104] which addresses ripeness in the context of pre-enforcement challenges for declaratory judgments.  In *Pic-A-State Pa.*, the Third Circuit determined plaintiff, a corporation engaged in the business of purchasing out-of-state lottery tickets on behalf of customers, had standing to challenge 18 U.S.C. § 1301 which prohibited the "transfer in interstate commerce of any lottery ticket."[105]  The Third Circuit found that Pic-A-State had  "terminated its business and suffered economic loss in response to the passage of the Amendment, [and] any further attempt to pursue its line of business would risk serious criminal penalties."[106]  This case is inapposite.  Cabela's is still in business, and the only economic loss Cabela's asserts is that the investigation and Subpoena have "caused Cabela's to retain counsel" and "incur fees."[107]  Moreover, Cabela's is not at risk of serious criminal penalties under § 3930 because § 3930 is a civil statute.

---

[103] *Id.* at 147-48.
[104] 76 F.3d 1294, 1297 (3d Cir. 1996).
[105] *Id.* at 1297.
[106] *Id.* at 1298.
[107] Reply Br. in Supp. of Mot. to Quash 5-6.

Cabela's next argues that it has standing because the "DOJ seeks Cabela's trade secrets without an agreement on confidentiality, which would allow the DOJ to disclose any finding of its investigation to the detriment of Cabela's business."[108] Cabela's has failed to identify what it contends are trade secrets versus confidential business information. Moreover, the DOJ requests do not specifically ask for trade secrets, and if some requests implicate information constituting trade secrets, the Court can address this later through an order.

Last, under the third prong of the standing analysis, the relief sought must be capable of redressing the plaintiff's injury or grievance.[109] Cabela's cannot satisfy this prong because the Court has determined the Subpoena is based on alternative theories and reasonable in light of the DOJ's stated investigation.[110]

---

[108] *Id.* at 8. The Court notes that the reason the DOJ is hesitant to enter into another Confidentiality Agreement with Cabela's is because the first time they did Cabela's responded with two documents, which after Court review, neither document would be helpful on their own to the DOJ. Cabela's relies on *Lexmark Intern., Inc. v. Static Control Components, Inc.*, for its argument concerning trade secrets which analyzed standing specifically under the Lanham Act. 572 U.S. 118 (2014). Under the Lanham Act, a plaintiff has standing where it can demonstrate "(1) a reasonable interest to be protected against the alleged false advertising and (2) a reasonable basis for believing that the interest is likely to be damaged by the alleged false advertising." *Id.* (internal quotation marks omitted). In that case, the parties agreed that plaintiffs' allegations of lost sales and damage to its business reputation gives it standing to press a false-advertising claim. *Id.* at 124. The *Lexmark* court had to decide if plaintiffs fell within the specific class of plaintiffs that congress authorized by statute to be able to sue under this specific antitrust law. *Id.* at 127-28. Cabela's' reliance on this case for the proposition that the DOJ not entering into a confidentiality agreement would confer standing because it seeks Cabela's' "trade secrets" is unconvincing.

[109] *See In re COVID-Related Restrictions on Religious Services*, 2024 WL 3616269, at *12.

[110] *See supra* Section A(1), Section A(2).

b.  Standing for Pre-Enforcement Challenges

Cabela's argues in the alternative that it has standing to invoke a pre-enforcement challenge to § 3930.  As noted by the Third Circuit in *National Shooting Sports Foundation v. Attorney General of New Jersey*,

> Pre-enforcement challenges are unusual.  To bring one, the plaintiff must show that the stakes are high and close at hand.  Normally, that means constitutional rights are at issue, those rights are threatened by significant penalties, and those penalties might well be imposed, as shown by past enforcement in similar situations or some other evidence of the threat.[111]

At the hearing, the DOJ raised three recently decided cases it argues are relevant to the instant action.[112]  The Court finds *Platkin v. Smith & Wesson Sales Co.*, instructive.  In *Platkin*, the lower court found an administrative subpoena to be valid and held that the constitutional challenges were not ripe.[113]  On appeal, the New Jersey Superior Court Appeals Division noted that,

> In determining whether an issue is fit for judicial review, we consider whether additional factual development is required. We find that to do so on this record would be improper, where there are few actual facts. Defendant has offered nothing in support of its motion but selected quotes from the Attorney General's public statements, outside the context of a fulsome discovery process. While we need not reach the second element in the ripeness analysis, we note there is no hardship to the parties by declining to address defendant's constitutional arguments now. Defendant has preserved its claims, and the parties, in conjunction

---

[111] 80 F.4th 215, 223 (3d Cir. 2023).

[112] Those cases were: *Smith & Wesson Brands, Inc. v. AG of N.J.*, 105 F.4th 67 (3rd Cir. 2024); *Platkin v. Smith & Wesson Sales Co.*, 289 A.3d 481 (N.J. Super Ct. App. Div. 2023); and *Del. State Sportsmen's Assoc. v. Del. Dep't of Safety & Homeland Sec.*, 108 F.4th 194 (3d Cir. 2024).

[113] 289 A.3d 481, 496 (N.J. Super. Ct. App. Div. 2023).

with the trial court, can take steps to protect any proprietary materials identified during discovery. Because ripeness allows courts to avoid 'premature adjudication' which would entangle them in 'abstract disagreements[,]' we end our analysis of defendant's sweeping constitutional claims here.[114]

Here, Cabela's cannot point to any statements made by the DOJ, or that Cabela's would face any concrete hardships by the Court not considering the constitutional arguments in the instant case. Cabela's offers nothing but conclusory and speculative statements about how it would be harmed at this stage.

In *National Shooting Sports Foundation* ("*National Shooting*"), the National Shooting Sports Foundation ("NSSF") challenged a New Jersey ("NJ") statute arguing it violated NSSF members' constitutional rights, and moved for a preliminary injunction, asserting that its members "will continually be at risk of litigation and potential liability unless [they] cease [] doing business."[115] The challenged statute in *National Shooting* is very similar to § 3930. The New Jersey law empowers the state's attorney general to sue "gun-industry members whose 'unlawful . . . or unreasonable' conduct 'contribute[s] to a public nuisance in [New Jersey] . . . .'"[116] Section 3930 prohibits a firearm industry member, "by conduct unlawful in itself or unreasonable under all the circumstances, may not knowingly

---

[114] *Id.* at 496.
[115] 80 F.4th 215, 217 (3d Cir. 2023).
[116] *Id.* (alteration in original).

or recklessly create, maintain, or contribute to a public nuisance through the sale, manufacturing, importing, or marketing of a firearm-related product."[117]

The Third Circuit Court of Appeals determined that the NSSF lawsuit was a pre-enforcement action[118] and held that for the NSSF to have standing to challenge the NJ statute, the "threat of injury must be 'certainly impending' or there must at least be 'a substantial risk that the harm will occur.'"[119] The Third Circuit also stated that for a case to be ripe, "[i]t must not 'depend[] on contingent future events that may not occur as anticipated, or indeed may not occur at all.'"[120] "Standing and ripeness demand certainty and immediacy. . . [e]ven in constitutional cases, there is no 'unqualified right to pre-enforcement review.'"[121] Because pre-enforcement challenges must still satisfy Article III standing, the court uses "a specialized test to discern whether the threat of enforcement is imminent."[122] In the context of *National Shooting*, the test required that the NSSF "show that it or its members (1) intend to take action that is (2) "arguably affected with a constitutional interest" but is (3) arguably forbidden by the Law, and (4) the threat of enforcement against them is

---

[117] 10 *Del. C.* § 3930(b).
[118] *National Shooting Sports Foundation*, 80 F.4th at 218. The NSSF challenged the statute on the grounds that it was preempted, violated Due Process, the First and Second Amendment, and the Dormant Commerce Clause–the same challenges made in the instant suit.
[119] *Id.* at 218.
[120] *Id.* at 219 (quoting *Trump v. New York*, 592 U.S. 125, 131 (2020)).
[121] *Id.* (quoting *Artway v. Att'y Gen. N.J.*, 81 F.3d 1235, 1247 (3d Cir. 1996)).
[122] *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)).

substantial."[123]  The Third Circuit ruled the NSSF did not have standing because (1) "[e]ven if federal law gives gun sellers a statutory immunity that New Jersey would violate just by filing a complaint, a statutory violation is not enough to show standing";[124] (2) the NSSF's argument concerning the chilling effect of the statute was not specific enough and just "conjures the specter of 'sweeping liability'";[125] and (3) the NSSF lacked any signs of an enforcement threat.[126]

The Third Circuit stated that the necessary threat of enforcement for pre-enforcement review must be both "credible" and "substantial."[127]  Some of the "signs" for enforcement are "past enforcement."[128]  The "risk of enforcement is greater when private parties can enforce the law," and the risk is lower when enforcement is "restricted to state officials who are constrained by explicit guidelines or ethical obligations."[129]  The Third Circuit pointed out that the NSSF never explained how making, marketing, or selling guns would trigger the

---

[123] *Id.*

[124] *Id.*  The NSSF argued that federal law provides them immunity and because they do not know what marketing and manufacturing would be unreasonable under the NJ law it "chills their protected conduct." *Id.*  The Third Circuit was unconvinced and ruled that the NSSF needed to show "how violating their purported statutory immunity 'has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *Id.*

[125] *Id.* at 219-220. In response to the NSSF's argument that the NJ law "chills its members' manufacturing, marketing, and sales" the Third Circuit held that all it was able to infer from that statement is that "its members plan to make, market, and sell guns." *Id.*

[126] *Id.* at 220.

[127] *Id.*

[128] The court noted that a strong tell of future enforcement is that "a law has been enforced against the plaintiff, a closely related party, or others for similar conduct." *Id.*

[129] *Id.* at 221.

challenged law,[130] and "the Attorney General 'might sue' the Foundation or its members, 'but it might not.'"[131]

The only difference between § 3930 and the NJ statute at issue in *NSSF* is that § 3930 can be enforced by private citizens.[132] But this difference alone would only affect "the threat of enforcement" prong and, even then, because this is a civil statute, the effect of such enforcement is chilled. As the Third Circuit noted, "civil penalties lower the temperature. And the same arguments made in the pre-enforcement challenge can be raised as affirmative defenses later."[133] The DOJ has not sought enforcement of § 3930 in the past, *nor is it currently seeking the enforcement of § 3930.* Cabela's has not shown how the stakes are "high" or "close at hand." All Cabela's has alleged is that based on the filing of the Subpoena, the DOJ is seeking to bring an action based on § 3930.[134] Cabela's has not stated it intends to take action

---

[130] *Id.* at 222.

[131] *Id.*

[132] *See* 10 *Del. C.* § 3930(g)(1). This point in the standing analysis was directly addressed in *National Shooting Sports Foundation v. Jennings*, and the District of Delaware held that "'[Plaintiff] has not pointed to any lawsuit filed or threatened by a private party.' Indeed, Plaintiff presents no other evidence that there was a substantial threat of enforcement–from private parties or from Defendant–at the time the suit was filed." 2023 WL 5835812, at *2 (D. Del. Sept. 8, 2023). The same rings true here.

[133] *National Shooting Sports Foundation*, 80 F.4th at 222.

[134] *See generally* Mot. to Quash. The Court notes that this is not the first action challenging the constitutionality of § 3930 nor is it the first decision addressing pre-enforcement standing. In *National Shooting Sports Foundation v. Jennings*, the District of Delaware dismissed a pre-enforcement challenge to SB 302 (§ 3930) on a lack of standing because there was no threat of enforcement. *See National Shooting Sports Foundation*, 2023 WL 5835812, at *2. The Court is cognizant of the fact that the District Court in this case did not consider a subpoena in its analysis because it was issued after the complaint was filed, but as noted, the Court does not believe that

that is "arguably affected with a constitutional interest" and that is "arguably forbidden by law."[135] Section 3930 prohibits "unlawful" conduct or conduct that is "unreasonable under all the circumstances."[136] Cabela's' conduct of selling firearms and ammunition does not, in and of itself, invoke the Constitution.[137]

The Court does not find that the threat of enforcement is "substantial." The DOJ has yet to enforce § 3930 against any person or entity, and absent the Subpoena, Cabela's is unable to point to anything else that supports a reasonable inference that a threat of enforcement is imminent.[138] Because the Court finds Cabela's does not have standing to challenge 10 *Del. C.* § 3930, it need not address Cabela's' argument that § 3930 is unconstitutional.

---

the investigative subpoena is demonstrative of a substantial threat of enforcement. Cabela's asserts that the outcome of District Court's decision would be different if it re-filed, but that is not the Court's reading of the decision. The District Court stated that it just did not consider after transpired events in the analysis, the District Court *did not state* that had the subpoena been issued beforehand it would have imparted standing onto plaintiffs.

[135] *See National Shooting Sports Foundation*, 80 F.4th at 219.

[136] 10 *Del. C.* § 3930(b).

[137] *See, e.g., National Shooting Sports Foundation*, 80 F.4th at 219 ("The Foundation says little about what it plans to do. It has pleaded that it is an association of gun makers and sellers, and it has offered declarations that the law chills its members' manufacturing, marketing, and sales. From that evidence, we can infer that its member plan to make, market, and sell guns. But that is all.").

[138] Cabela's maintains that the "threat of enforcement" is already present because of the DOJ's Motion to Enforce. Mot. to Quash 7. Absent caselaw to support that an investigative subpoena is enough to find a *substantial* threat of enforcement, the Court remains unconvinced.

**WHEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Enforce Subpoena *Duces Tecum* is **GRANTED** and Respondents' Motion to Quash the Revised Subpoena is **DENIED**.

**IT IS SO ORDERED**.

                                                    /s/ Jan R. Jurden
                                        Jan R. Jurden, President Judge

cc:  Prothonotary